LINN COUNTY BANK v. MARY L. CLIFTON, Plaintiff in Error.

Division One, December 31, 1914.

1. **WRIT OF ERROR: Title of Case.** When a case comes up to the Supreme Court upon writ of error, its title runs the same as the statute (Sec. 2039, R. S. 1909) prescribes in case of appeal. The parties should not be reversed.

2. **SUFFICIENCY OF PETITION: Aided by Answer.** The court cannot look to averments in the answer for the purpose of

determining that the petition does not state a cause of action. The petition must stand on its own foot, and its sufficiency be determined by its own averments.

3. ———: **Things Discovered After Trial.** The judgment cannot be held to be iniquitous by things brought to light since it was rendered. There being no evidence, no motion for a new trial and no bill of exceptions, the sufficiency of the petition as a statement of a cause of action cannot be impeached by things discovered after judgment.

4. ———: **Money Loaned on Demand: Allegation of Demand.** Averments in a petition that money loaned on notes payable "on demand" is "due and unpaid" are sufficient averments of a demand, after judgment, without demurrer, and that the notes had matured. At their worst they constitute an imperfect statement of a cause of action, and in such case the rule is to aid the petition by every reasonable intendment and inference springing from the averments actually made.

5. ———: **No Objection Below.** In ruling on the question of whether a petition states a cause of action, it is allowable for the court to be influenced somewhat by the fact that its sufficiency was in no manner questioned in the trial court, either by demurrer or by objection to the introduction of testimony, and, where there is no motion for new trial or bill of exceptions, by the stiff and usual rule of appellate practice that a case must be disposed of on appeal on the same theory on which it was tried below.

6. **JURISDICTION: Untimely Filing of Amended Petition: Waiver.** The jurisdiction of the court is in nowise affected by the fact that the plaintiff's amended petition was filed out of time; besides, having entered no objection and filed no motion to strike out because the amended petition was not filed within the time permitted by the court, and having filed answer and gone to trial, defendant waived the objection of untimeliness.

7. ———: **Limitation: Allowance Against Estates: Amended Petition.** On appeal the special Statute of Limitations of two years as to claims against estates will not avail to oust the court of jurisdiction, where suit was brought within the two years, and the amended petition was not filed until after the two years had expired, where, by filing an answer, the right to challenge a change or departure in the cause of action has been lost, and there is nothing to show a departure.

8. ———: ———: **Pleading.** The two-year Statute of Limitations, as to claims presented against a decedent's estate, to be available as a defense to a suit brought in the circuit court, must be pleaded.

9. ————: **Failure to Give Bond: Lost Notes.** Failure to give bond in a suit on lost notes does not affect jurisdiction of the cause. It is merely a condition on which judgment will go. Besides, in this case, no such bond was required, since the suit is not one on lost negotiable promissory notes.

10. ————: **Special Acts: Probate Courts.** The Constitution of 1875 laid an ax at the root of special legislation, and in harmony with that stroke the Legislature of 1877 felled by repeal all special acts creating probate courts in named counties, and by a general law established probate courts in all counties and in the city of St. Louis, and that general act is still live law.

11. ————: **Circuit Courts: Claims Against Estates: Constitutional.** Circuit courts in Missouri have jurisdiction to try suits against the estates of decedents, and to enter judgment therein, and to cause such judgments to be exhibited to the probate court to be classified as allowed claims against the estates and to be paid, and a bringing of the suit in the circuit court is an exhibit of the demand. Such jurisdiction has been designated by statute, and such statute was authorized by the Constitution of 1875. And not only by the consensus of the bench and bar, but by the public policy of the State, as evidenced by the body of the constitutions and statutes, it has been recognized for nearly one hundred years that circuit courts have jurisdiction of the subject-matter of trying suits seeking to establish demands against estates, and those things are of themselves entitled to great weight as a pregnant circumstance and very persuasive evidence of what the law is.

12. ————: ————: ————: ————: **Prior Interpretation.** The circuit courts having prior to the adoption of the Constitution of 1875 been given jurisdiction of the subject-matter of trying suits against estates, the rule applicable to interpretation of statutes will be observed, namely, that the Constitution will not be construed as taking away such jurisdiction unless it uses express words of exclusion or repeal, or such words by necessary implication.

13. **CONSTITUTIONAL QUESTION: Decision of Court of Appeals.** A decision of a Court of Appeals to the effect that a certain statute is constitutional, though rendered by a court having no jurisdiction of the point, and therefore not binding on the Supreme Court, may receive the benediction of the Supreme Court, and such ratification relates back to the original holding.

14. **VALUE OF PRECEDENTS.** While courts should not follow former decisions blindly, they should not ignore them lightly. On the other hand, general language used in an opinion by the judge writing it must always be read in the light of the facts and questions held in judgment.

Error to Linn Circuit Court.—*Hon. John P. Butler,* Judge.

Affirmed.

*Frans E. Lindquist* for plaintiff in error.

(1) The circuit court of Linn county had no jurisdiction over the subject-matter of the action. Such jurisdiction is vested in the probate court. Sec. 22, art. 6, Constitution 1875; Sec. 1674, R. S. 1899; Sec. 34, art. 6, Constitution 1875; Secs. 191, 192, 1753, R. S. 1899; Mt. Olive and St. Louis Coal Co. v. Slevens, 56 Mo. App. 107; Hoffman v. Hoffman, 126 Mo. 486; Beekman v. Richardson, 150 Mo. 436; Matson & May v. Pearson, 121 Mo. App. 128; McKee v. Allen, 204 Mo. 675; Korthman v. Markson, 34 Kan. 542; Kelley's New Missouri Probate Guide, par. 116; Pearce v. Calhoun, 59 Mo. 271; 2 Woerner's Law of Administration, par. 392; Scott v. Royston, 223 Mo. 592; Board of Public Works v. Columbia College, 17 Wall. 531. (2) Giving of notes suspended the right to sue upon the account until demand or maturity of the notes. Steamboat Charlotte v. Bumm, 9 Mo. 66. When the old notes were cancelled and surrendered to Chapman, Clifton & Co., upon the execution of such new notes, strong presumptive evidence that the agreement of the parties was that the old notes should be extinguished. Electric Co. v. Ten Broek, 97 Mo. App. 173. The delivery of the old notes to Chapman, Clifton & Co., marked paid, when the new notes were executed, extinguished the old one. Walker v. Dunham, 135 Mo. App. 409. Old notes should have been filed. Sec. 643, R. S. 1899. Recovery was conditional on giving bond. No bond was given. Sec. 745, R. S. 1899; Eans v. Exchange Bank, 79 Mo. 185. Copy of notes or account sued on should have been attached to the original petition and served upon the executrix.

Sec. 187, R. S. 1899; Bank v. Suman, 79 Mo. 527. Demand notes are not deemed payable until presented or demanded. Sec. 460, R. S. 1899; Johnson v. Bank, 173 Mo. 171; Tiedeman on Commercial Paper, sec. 296. (3). Action was prematurely brought. Weinwick v. Bender, 33 Mo. 80; McDowell v. Morgan, 33 Mo. 555; Jennings v. Zerr, 48 Mo. App. 528. No action could be maintained as upon an account, because the cause of action was not due at the time. Heard v. Ritchey, 112 Mo. 516. The petition does not state facts sufficient to constitute a cause of action against the defendant.

*Bresnehen & West* for defendant in error.

(1) The circuit court had jurisdiction to render the judgment in this cause. R. S. 1909, sec. 197; R. S. 1899, sec. 191. This section has been construed so frequently and the jurisdiction of circuit courts in this regard upheld so often that the question as to their jurisdiction is no longer open to discussion. Bank v. Suman, 79 Mo. 527; Stephens v. Bernays, 119 Mo. 143; Richardson v. Palmer, 24 Mo. App. 480; State ex rel. v. Edwards, 162 Mo. 660; Stephens v. Bernays, 41 Fed. 401, 44 Fed. 642; Nichols v. Reyburn, 55 Mo. App. 1; Jamison v. Wickham, 67 Mo. App. 575; Wernse v. McPike, 100 Mo. 486; Ziegenheim v. Tittmann, 103 Mo. 566; Watson & May v. Pearson, 121 Mo. App. 135; Gewe v. Hanszen, 85 Mo. App. 136. (2) This suit is against the executrix of the estate of W. H. Clifton, deceased, to recover money loaned to the partnership firm of Chapman, Clifton & Co., while said W. H. Clifton was a member of the firm. It is not a suit upon the notes given for the various loans that were made, but rather to recover the loans as evidence of which the notes were given. After the retirement of Clifton from the firm and after his death the notes were renewed by the surviving partners in the firm name,

and the old notes were cancelled and delivered up to said firm. It is elementary law that the acceptance of a note does not extinguish the debt for which it was given unless such was the intention of the parties at the time. Steamboat Charlotte v. Hammond, 9 Mo. 59; McMurray v. Taylor, 30 Mo. 263; Doebling v. Loos, 45 Mo. 150; Powell v. Charless, 34 Mo. 485; Reyburn v. Mitchell, 106 Mo. l. c. 379; Keyser v. Hinkle, 127 Mo. App. 76. The fact that one of the original debtors was deceased at the time the renewal notes were given makes no difference. Unless the parties agreed that the acceptance of the note should have the effect of extinguishing the debt the original debt would continue to exist. Powell v. Charless, 34 Mo. 485; Savings Institution v. Mead, 52 Mo. 543. The question of whether or not the parties did so agree was one of fact for the trial court, and the determination of that question by that court is final. (3) The suit was brought before the two years period of limitations had expired, and the amended petition did not change the cause of action. Under these circumstances it cannot be said that the plaintiff's claim is barred by the administration Statute of Limitations. Gewe v. Hanszen, 85 Mo. App. 136. (4) Where the deceased was one of the original debtors no case has held that demand, protest and notice are necessary to bind him. Leabe v. Goode, 67 Mo. 126; Ridgley v. Robertson, Mo. App. 45.

LAMM, J.—This cause was sent and docketed here under a reversed title. We reconstruct the title by transposition as above to agree with our usage and avoid confusion in our reports. When a case comes up on error, by present usage here the title runs the same as the statute prescribes on appeal. [R. S. 1909, sec. 2039.] So, when a defendant is plaintiff in error, it has been found that the word "defendant" creeps by slip into our opinions in a double sense; hence,

for convenience and to avoid confusion, throughout this opinion we will use the term *plaintiff* for "defendant in error" and the term *defendant* for "plaintiff in error."

The record shows that in the years 1904, '05, '06, one W. H. Clifton was a member of a firm of merchants in business at Brookfield, Missouri, under the style of Chapman, Clifton & Co. At a certain time Clifton retired and the remaining partners continued business under the old firm style. Subsequently, to-wit, on the last day of April, 1907, Clifton died testate and some time thereafter his widow, the defendant, Mary L. Clifton, was duly appointed executrix of his will and thereupon took upon herself the burden of administration. Thereafter, on June 3, 1909, plaintiff bank sued her as executrix for money had and received by the firm on sundry dates prior to the retirement of her husband. On the next day summons was served. This was within the two years allowed for the exhibition of claims. On October 8, 1909, leave was granted plaintiff to file an amended petition in forty-five days. Out of time, to-wit, in the ensuing February, such petition was filed in five counts. We infer this was beyond the two years for the exhibition of claims. Without objection on the part of defendant or motion to strike out because filed out of time, or because of a departure, presently an answer was filed making certain admissions and denials and pleading new matter deemed to constitute a defense. A reply coming in, the cause was at issue on the facts and merits, and at a trial to the court without the aid of a jury judgment went for plaintiff bank for $4287.71 and costs. No motion for a new trial or in arrest or bill of exceptions was filed, but within a year thereafter defendant sued out a writ of error in the Kansas City Court of Appeals. That court certified the case here on a constitutional point and here it is on the record proper.

At bottom the questions are two, *viz.*: (1) Does the petition state facts sufficient to constitute a cause of action? (2) Did the circuit court of Linn county have jurisdiction of the subject-matter?

Sufficient further summary of the record to pass on those two questions understandingly will appear in the body of the opinion.

I. *Of the petition.* (a) The petition alleges, *inter alia,* that when the money sued for came into the hands of the firm of Chapman, Clifton & Co. during the time testatrix's decedent was a member, notes were taken as evidence of the indebtedness, which were renewed from time to time and part payments were made thereon. At such times as these renewals were made the then outstanding notes were surrendered to the firm and the last series of notes given in renewal were brought in and tendered to defendant. By her answer she pleaded, *inter alia,* that after her husband died the firm of Chapman, Clifton & Co., as it then existed, went into bankruptcy and these identical notes were allowed against the bankrupt estate in the Federal court having jurisdiction of the bankruptcy proceeding; that plaintiff bank received dividends thereon, Clifton not being a member of the firm at the time and the notes having been renewed by the firm after her husband's retirement; she pleaded the allowance in bankruptcy, as we construe it, by way of estoppel, or else by way of conclusive evidence that the plaintiff had accepted the new notes in full discharge of the old notes on which her husband was bound as a member of the firm. Be it one way or the other, issue was taken on these averments by the reply, and the court found against her on the issue so raised. In this state of the record we are asked to consider the matter pleaded in her answer, and to determine that the court erred in its finding on the issue. But such argument avails nothing; for not only have we no evi-

dence here, absent a bill of exceptions, but the determinative question in hand strikes only at the sufficiency of the petition. To determine the sufficiency of a petition on the averments of an answer is not a rule of decision of this court known to us. We are cited to no case and it is probable on principle that none could possibly exist sustaining the line of argument advanced by learned counsel. A petition stands on its own foot. It is bad or good in law by its own four corners. We may not look to the answer to adjudge the sufficiency of the petition in stating a cause of action.

(b) It is argued further that the judgment is iniquitous and that certain elaborately mentioned things, brought to light (it is said) since the judgment was rendered, establish its iniquity. If reason be the life of the law, then, what is said in the former paragraph applies here. None of those things are before us on a writ of error on this record, and if they were they are logically disconnected from the question of the sufficiency of the petition. Accordingly we put them away from us.

(c) It is argued that by taking notes and renewing them the cause of action on the original consideration, as for money had and received, was suspended until the maturity of the last renewal notes. Therefore, it is said, the suit was prematurely brought, that the petition should have shown by proper allegation that the notes had matured. As to that we say: Assuming for the nonce that the petition should have contained such an allegation or an equivalent one, and assuming, for the purposes of this case only, that absent a demurrer to the petition and present an implied admission below that the petition was good in that particular, as here, the point is still open, yet we cannot allow the petition bad on inspection because of such alleged infirmity. The argument runs on the theory that these renewal notes and all the notes were payable *"on demand;"* that, therefore, the notes

did not mature until such demand.  Hence, a "demand" should have been averred.  Now, the petition does contain averments that the various balances claimed are *due and unpaid*.  After judgment we think the averment is sufficient.  It is not too far a cry to say that if demand is necessary to make money due, an allegation that the money is due is impliedly an allegation of demand by way of inference.  We have been so lately over the question in Ice & Cold Storage Co. v. Kuhlmann, 238 Mo. l. c. 702 et seq., that further exposition is waste time and space.  At the very worst it was the imperfect statement of a cause of action, and the rule of decision in this jurisdiction is to liberally aid the petition by every reasonable intendment and inference springing from the averments actually made.  The strong presumptions are that the judgment was correct, that the court proceeded by right and not by wrong.  Hence, on such bare record as we have here, we must assume that court heard evidence sufficient to found the judgment upon and to sustain it after its rendition.

(d)  As we understand the brief of learned counsel for defendant, other specifications of error, though of a double aspect, group themselves more naturally under the head of jurisdiction.

The premises considered we rule the petition stated a cause of action.  In making this ruling we are somewhat influenced by the fact that the question of the sufficiency of the petition was in no manner raised below either by demurrer or by objection to the introduction of testimony on that ground.  Had defendant at a late day, to-wit, after answer and when the issues were made up, raised below the point of the sufficiency of the petition for the first time at the trial, she would even then have subjected herself to the criticism of this court, often and often administered (see the Kuhlmann case, supra, and authorities cited), that such

practice is not favored and smacks of lying in wait. Much more should the practice be looked upon with disfavor when defendant stood by and suffered judgment and then, without a motion for a new trial or in arrest; seeks to overturn a solemn judgment, rendered on due trial, by injecting such question for the first time in the appellate court. Some force and effect, too, must be allowed to the stiff and useful rule of appellate practice that a case must be tried above on the same theory it was tried below—else we would here try a different case than was tried there and reverse judgments on points on which no exception was taken, *nisi prius*—this, in the face of the statute in that behalf made and provided.

II.  *Of jurisdiction.*

(a)  Complaint is made that the amended petition was filed out of time. It is quite out of the question to perceive how that fact in anywise affects the jurisdiction of the court; nor do we perceive how defendant, having entered no objection or filed no motion to strike out, is in a position to avail herself of the point, nor how she could complain of the fact after filing answer and going to trial. The right doctrine is that such objection is waived by answering.

(b)  But the complaint in hand has another angle, to-wit, that the special Statute of Limitations of two years, in force as to claims against estates at the time this suit was brought, ousted the court of jurisdiction of the claims set up in the amended petition. As to that we say: There is no substance in the point at all, as we view it. In the first place it has been ruled that one of the purposes of our liberal statutes on the allowance of amendments is to toll the Statute of Limitations. [Walker v. Railroad, 193 Mo. l. c. 474-5 and *ante.*] Moreover, where, as here, there is nothing to show that defendant objected to the amended petition, and where, as here, by filing an answer the right to

challenge a change in a cause of action, if any (*i. e.*, a departure), has been lost (Liese v. Meyer, 143 Mo. l. c. 556, and supra), and where, as here, there is nothing to show there was in fact any change in the cause of action, we cannot allow substance to the contention. Neither did defendant in her answer plead the Statute of Limitations, a fatal infirmity. Not in the case below, it is not in the case above for any purpose.

Furthermore, may defendant argue with one breath the case was prematurely brought and with the next argue it was brought too late? Hardly.

(c) It is argued there was no jurisdiction, because (it is said) the record shows plaintiff gave no indemnifying bond under the sections 1983 and 1984, Revised Statutes 1909, relating to suits on lost negotiable promissory notes. As to that we say: This is not a suit on lost negotiable promissory notes, hence the statute has no application. Moreover, if one was required (as it is not) a failure to give a bond, if one was not given, does not affect *jurisdiction* of the cause. It is merely a condition on which judgment will go. Furthermore, as judgment *did* go, we would assume in aid of regularity on the kind of a record we have here that the condition was complied with, absent a showing to the contrary.

We rule this point, also, against defendant and put our ruling on the authority of cases collected in the foot note to section 1984, Revised Statutes 1909 (*quod vide*).

(d) With the above questions at rest, we come to defendant's main insistence, to-wit, that circuit courts in Missouri are without jurisdiction to try suits at law involving claims against estates, but that jurisdiction exists exclusively in probate courts under our Constitution. Learned counsel for defendant asserts the point is new and novel, admits that at the trial below he made no such point, because he then lay under the spell of an error, common up to that time to the

whole bar and all the courts of Missouri, to-wit, that circuit courts had jurisdiction in suits against administrators and executors to establish claims against estates. It is wholly irrelevant to the issue to stop to inquire (as bruited by counsel on both sides) whether the contention of defendant's learned counsel is a "new discovery" or "invention," or whether it is an old heresy long since exploded. Be it one or the other the proposition cannot be allowed to defendant as sound, because:

(1)   The twenty-third General Assembly, Laws 1865-6, p. 83, enacted a special law establishing "probate courts" in Linn and twenty-six other named counties. These courts were given "concurrent" jurisdiction with circuit courts in certain named instances, immaterial here, and "original" and "exclusive" jurisdiction in specified matters, one of which is "to hear and determine all suits and other proceedings instituted against executors and administrators, upon any demand against the estate of their testator or intestate, subject to appeals."

Something is made by counsel of this act and of adjudications on it; but that line of argument avails nothing. The act is no longer law and doctrines of the case, construing it have been burned up by the legislative torch. Sprinkled here and there over Missouri were other probate courts created by special acts, and special courts that were given probate jurisdiction by special acts, so that at the time of the Constitutional Convention in 1875 there was a patchwork of courts having probate jurisdiction—a jurisdiction resting chiefly in county courts up to that time. The demoralizing effect of special legislation, not only on the lawmaker but on the people, was so manifest that the Constitution of 1875 laid an ax at the root of the evil, and presently much of the former special legislation was swept away and with these exploded acts fell by repeal all special acts creating probate courts in named coun-

ties. [Laws 1877, p. 232, sec. 20.] So that we pass to an examination of existing laws.

(2) In 1877 the General Assembly (Laws 1877, p. 229 et seq.) enacted a general law establishing probate courts in all counties and in the city of St. Louis. This Act of 1877, as far as material to this suit, has been brought forward in the various revisions of our statutes and is now live law, appearing as article 4, chapter 35, Revised Statutes 1909, under the title of "Courts of Record;" subtitle, "Probate Courts"— section 4056, Revised Statutes 1909, reading:

"Said court shall have jurisdiction over all matters pertaining to probate business, to granting letters testamentary and of administration, the appointment of guardians and curators of minors and persons of unsound mind, settling the accounts of executors, administrators, curators and guardians, and the sale or leasing of lands by administrators, curators and guardians, and over all matters relating to apprentices; and such judges shall have the power to solemnize marriages."

Notice that the foregoing statute is but the legislation necessary to put into effect the constitutional provision we will refer to further on.

The Constitution prescribes that circuit courts "shall have . . . such *concurrent* jurisdiction with and appellate jurisdiction from *inferior tribunals* and justices of the peace *as is or may be provided by law*." [Constitution, sec. 22, art. 6.] Turning to section 34 of the same article of the Constitution, it empowers the Legislature to establish a probate court in every county and a uniform system. It then goes on (and, observe, by pretermitting the use of all such words as *original, concurrent* or *exclusive*) to prescribe the same jurisdiction for probate courts, employing therefor the same significant and carefully selected words as the Act of 1877 (*vide* section 4056, supra), which latter section is, in turn, but necessary

legislation carrying the Constitution into effect as above noticed.

Now, by section 23, article 6, of the Constitution the circuit court is given superintending control over "probate courts, county courts, municipal corporation courts, justices of the peace, and all inferior tribunals in each county in their respective circuits." The phrase, "inferior tribunals," evidently is used to cover probate courts as in section 22, article 6, of the Constitution, which gives the circuit court such concurrent jurisdiction with them as "may be provided by law." This phrase, "as may be provided by law," is of main significance as we shall soon see; for turning again to the statutes, we find by section 192, Revised Statutes 1909, that all actions by law surviving against the executor or administrator, pending against any person at the time of his death (*i. e., in the circuit court*), shall be considered demands legally exhibited from the time such action shall be revived. The next section (193) prescribes that actions commenced against an executor or administrator after the death of "the deceased" shall be considered demands legally exhibited, etc. The statute then goes on in other sections to prescribe how demands may be legally exhibited where the claim is adjudged in the probate court and not in the circuit court. Finally, closer home to the point, by section 197 it is ordained that "any person having a demand against an estate may establish the same by the judgment or decree of some court of record, in the ordinary course of proceeding, and exhibit a copy of such judgment or decree," etc., to the probate court. Then by section 214 it is ordained "that if any judgment of a court of record be filed in said court (*i. e.*, in the probate court) . . . such court shall determine its class," etc.

In the exposition of the statutory and constitutional scheme thus outlined, it will do to say that it is part and parcel of the common knowledge of Mis-

souri-made law that, beginning almost with its admission to the Union, it has been the uniform and consistent general public policy of the State to allow suits against administrators and executors (to establish claims against estates) to be prosecuted in courts of record other than probate courts "in accordance with the ordinary course of proceeding." [*Vide,* Vol. 1, R. S. 1825, p. 113, secs. 52-3; R. S. 1835, p. 56, sec. 7; R. S. 1845, p. 92, sec. 7; R. S. 1855, p. 153, sec. 8; G. S. 1865, p. 502, sec. 8; R. S. 1879, sec. 191; R. S. 1889, sec. 190; R. S. 1899, sec. 191; R. S. 1909, sec. 197, supra.]

Of course, from the above category we eliminate special acts giving special jurisdiction to this or that court having probate jurisdiction, which acts are no longer in force, and we take no note of inapplicable general laws, if any, limiting concurrent jurisdiction in the matter of mere amount.

Not only was such public policy evidenced as above, but it was evidenced by a uniform rule of decision in appellate courts. So that it is not too much to say that by a concensus of opinion of bench and bar, it was also recognized for nearly one hundred years that the public policy of this State, as evidenced by the foregoing parts of the body of its statutes and constitutions, gave jurisdiction of the subject-matter in hand to the various circuit courts not only before the Constitution of 1875, but after the adoption of that Constitution and the adoption of the legislation necessary to carry it into effect. This venerable aggregation of wisdom in the line of uniform construction, presently reinforced by a wealth of authority as well as by the uniform legislation above noticed, is entitled to great weight as a "pregnant circumstance and very good evidence of what the law is," precisely as we have written time and again. [*Vide,* Venable v. Railroad, 112 Mo. l. c. 125, and cases following its pronouncement.]

Moreover, when the Convention of 1875 met it found this public policy in existence and to be reckoned

with. Accordingly, we stress the point that when it drafted its Constitution, it carefully omitted using all or any words earmarking an intention to change the public policy of the State or to put in probate courts exclusive jurisdiction in the matter of allowing claims. So, it just as carefully gave circuit courts such concurrent jurisdiction with "inferior tribunals," ":as is or may be provided by law." In this condition of things the rule of law applicable to statutes is applicable here, to-wit, that when the circuit court had been given jurisdiction prior to the adoption of the Constitution of 1875, then, that instrument will not be construed as taking it away unless it uses express words of exclusion or repeal, or such words by necessary implication, neither of which it does. [Tackett v. Vogler, 85 Mo. l. c. 483.]

Said PHILIPS, P. J., in Richardson v. Palmer, 24 Mo. App. 480, in speaking for the Kansas City Court of Appeals to the point in hand:

"It is objected that the circuit court had no jurisdiction of this action as, by the Constitution, section 34, article 6, exclusive jurisdiction over the subject-matter is vested in the courts of probate. The language of the organic act relied on is, that: 'Said court shall have jurisdiction over all matters pertaining to probate business.'

"It had, long prior to the adoption of this Constitution, been recognized in practice and by statute, as of the customary jurisdiction of the circuit courts to entertain suits against administrators for the establishment, in the first instance, of demands against estates under administration. Express authority to this end was conferred on the circuit courts by statute, at an early date, which has been continued in every revision up to 1879. [See Sec. 191, R. S. 1879.]

"Had it been the purpose of the framers of the Constitution to accomplish so important and radical a change in practice, as contended for by appellants, it

would have been done in explicit terms, and not left to mere implication. [Humes v. Railroad, 82 Mo. 221.]

"Where a court has possessed and exercised jurisdiction over a subject-matter, even if it were conceded that such jurisdiction was conferred over it on another court by a subsequent law, such fact would not oust the jurisdiction of the first court, without the employment in the latter enactment of words of exclusion, in the absence of any repealing clause. Concurrent jurisdiction over the subject-matter is not unusual in the two courts. [Tackett v. Vogler, 85 Mo. 480; Purdy v. Gault, 19 Mo. App. 191; Baptist Church v. Robberson, 71 Mo. 326.] The objection to the jurisdiction is overruled."

Finally, if it be objected that the Supreme Court is not bound by the decision in Richardson v. Palmer, for that the court making it had no jurisdiction to finally determine the constitutional question it did determine, to-wit, whether section 197, Revised Statutes 1909, is constitutional, it will be only necessary to point out that the exposition of the law by that learned court on the point has the benediction and vise of this court. Such ratification relates back to the original holding and makes it controlling on us, thus: In State ex rel. Ziegenhein v. Tittmann, 103 Mo. l. c. 566 et seq., speaking to the same question, we said: "On this point we approve the conclusion reached by, as well as the reasoning of, Judge PHILIPS in the case of Richardson v. Palmer, 24 Mo. App. 480. He declared the law as it is and as it ought to be."

In leaving the question we make this further observation: The question is far from new. Contra, it has been approached from more angles than one in the appellate courts, and, as already stated, in an unbroken line of cases (in some, by direct adjudication; in others, by the reasoning employed; in yet others, by a mere assumption of the fact) the jurisdiction of the circuit court has been sustained in the allowance

of a claim against an estate by suit, the judgment to be certified to the probate court for classification and payment, and no execution being allowed from the circuit court. Witness:    Ryans v. Boogher, 169 Mo. l. c. 683, *post* and *ante;* Madison County Bank v. Suman's Admr., 79 Mo. 527; Cole County v. Dallmeyer, 101 Mo. l. c. 64; Wernse v. McPike, Admr., 100 Mo. 476; State ex rel. v. Edwards, 162 Mo. l. c. 666; Stephens v. Bernays, 119 Mo. 143; Nichols v. Reyburn, 55 Mo. App. 1; Jamison, Admr., v. Wickham, Admr., 67 Mo. App. 575; Matson & May v. Pearson, 121 Mo. App. l. c. 134-5; Gewe v. Hanszen, 85 Mo. App. 136; Wabash Ry. Co. v. Ordelheide, 88 Mo. App. l. c. 593; Church v. Church, 73 Mo. App. l. c. 424.

It has been said that precedents are valuable the same as history, the same as experience, agreeable to the precepts, that two heads of equal caliber know more than one head; there is more wisdom in the many than in the few. So that while no court should follow them blindly, yet no court should ignore them lightly.

The decisions of other States (for example, Kansas) industriously collated and relied on by learned counsel for defendant, construing constitutions and statutes somewhat differently worded than ours, ought not to control us, as they evidence a different public policy.

So, too, the general language from some of our own decisions, stoutly relied on by defendant, is not in point. Such language used in a case, by the judge writing it, must always be read and construed in the light of the facts and questions actually held in judgment. [State ex rel. Bixby v. St. Louis, 241 Mo. l. c. 238 et seq.]

The premises considered, we may not overturn the landmarks of the law; nor can we very well follow the lead suggested by the ingenious counsel for defendant. Speaking in figure of speech, we fear his eyes were washed and preternaturally brightened by tears of

affliction springing from defeat *nisi;* and that he raises the point by force of distress and because no other was left to him, absent a bill of exceptions.

The precept of the fireside, taught long ago at the mother's knee, announced that drowning men catch at straws. We put this forward as a mild and good humoured view, to shield us a bit from the serious charge fulminated in defendant's brief against plaintiff's counsel, to-wit: ''That history repeats itself, from Columbus down to Newton, Fulton, Franklin and Ericson, et al., that the inventor of, or believer in, any new idea should be ridiculed.''

Let the judgment be affirmed. It is so ordered. All concur.