JOHN J. PRYOR v. GEORGE C. KOPP, Administrator of the Estate of THOMAS P. THOMSON, Appellant.—119 S. W. (2d) 228.

Division Two, August 17, 1938.

*W. O. Thomas, Charles P. Woodbury* and *Paul Barnett* for appellant; *Watson, Ess, Groner, Barnett & Whittaker* of counsel.

*Calvin, Vanderventer & Kimbrell* for respondent.

LEEDY, P. J.—This is an appeal from a decree of the Circuit Court of Jackson County, Missouri, in a suit filed therein by respondent, as plaintiff, against appellant, as defendant. The petition was in two counts. The findings on the second count, which sought partion of specific personal property, went for defendant, and plaintiff did not appeal, and so it passes out of the case. The first count of the amended petition, on which the case was tried, alleges in substance, that from December 1, 1925, until on or about November 1, 1930, plaintiff and the deceased "were equal partners under an oral contract, and were engaged in the business of constructing sewers and highways, paving streets and roadways, and doing general excavation work in and about Kansas City, Missouri, and vicinity;" alleges the dissolution of said partnership by mutual consent on or about November 1, 1930, but that, *as between themselves*, no accounting was ever had, although often demanded by plaintiff. It is then alleged that the deceased, during the existence of said partnership, received large amounts of money, *the profits of the partnership*, "which amounts are greatly in excess of the share of such profits to which the deceased then was, or his estate now is entitled," and that upon an accounting it would be made to appear the estate of the deceased is indebted to the plaintiff in a large sum of money, as his just portion of the profits derived from said partnership. An accounting was asked, with a prayer for a division of said profits, and judgment therefor against the estate of the deceased, and for general relief.

Thomson died April 6, 1932, and six days thereafter defendant was granted letters of administration upon his estate. Plaintiff's petition was filed August 20, 1932, and at the return term, defendant, for answer to said petition, filed a verified denial of the partnership. The amended petition, the allegations of which are hereinabove set forth, was filed September 21, 1932, to which defendant filed answer on November 7, 1932, consisting of: (1) a denial of the partnership as set out in plaintiff's petition; (2) a denial that plaintiff and deceased "were ever at any time or place partners with each other in any business or enterprise of any kind or character, and that defendant is indebted to plaintiff in any sum or sums whatsoever." Further answering, defendant denied generally the allegations of plaintiff's petition, but expressly admitted the death of deceased as

of the date hereinabove mentioned, and his own appointment and qualification as administrator of the estate of deceased. On November 28, 1932, the cause was heard before the court and a jury on the issue, as recited in the interlocutory decree, ''as to whether or not a partnership agreement was entered into and existed between the above named plaintiff and Thomas P. Thomson, the above named defendant, at the time and during the time alleged in plaintiff's petition.'' This issue the jury found in favor of plaintiff. Whereupon an interlocutory decree was entered, establishing the fact of partnership as alleged in the petition, and ordering an accounting. For the latter purpose, the court appointed John B. Gage, Esq., a member of the Kansas City Bar, as referee, who entered upon his duties. Thereafter, on June 19, 1933, when the hearings before the referee were about to be completed, by leave of court defendant filed an amended answer which incorporated the allegations of his former answer, as hereinabove mentioned, and in addition thereto, interposed the defense of laches.

In accordance with the finding and report of the referee, the court entered its final decree by which it was adjudged that the plaintiff was ''entitled to recover of and from the defendant as his, the plaintiff's part and share of the profits of the partnership,'' the sum of $123,768.27 together with his costs; and it was ordered that ''upon the filing of a certified copy of this judgment and decree with and in the office of the clerk of the probate court of Jackson County at Kansas City, in the estate of Thomas P. or T. P. Thomson, deceased, the same shall thereupon be allowed and classified according to law as a claim, demand and judgment against the estate of said Thomas P. or T. P. Thomson.'' The other, and main facts, will be noted later in the course of the opinion.

The first contention is that the circuit court was without jurisdiction of the subject matter of the suit. Appellant's insistence in this behalf is based upon the proposition that respondent is seeking a complete administration of a partnership estate in the circuit court, and so it is asserted that ''the administration of the estate of a partnership, when one of the partners is dead, can only be had in the probate court, and that the circuit court has no jurisdiction of a suit originally instituted therein to try any action, the object of which is to declare the interests of the living and deceased partners in the partnership assets.'' We do not so regard the suit. If the partnership relation were admitted, then we would be dealing with quite another question. The existence of that relationship is one of the vital issues, because plaintiff's right to recover at all is wholly dependent thereon. Another distinguishing characteristic of this suit is that the rights of creditors are in nowise involved. The allegation of the petition is that only as between themselves, the partners, has there been no accountng, and the proof so shows. The suit

is one to establish the fact of the existence of the former partnership relation, and, by an accounting, to determine the amount of the profits thereof, which are alleged to be in the possession of the administrator of the individual estate of the deceased partner (title to which the latter claims, not as firm assets, but as assets of the individual estate of his decedent), and to obtain a money judgment against said estate for plaintiff's proportionate share of said profits. Under these circumstances, may this suit be maintained, or must plaintiff be remitted to the probate court, there to administer as the surviving partner under the statute?

By Section 185, Revised Statutes 1929 (Sec. 185, Mo. Stat. Ann., p. 115), it is provided: "All actions commenced against such executor or administrator, after death of the deceased, shall be considered demands legally exhibited against such estate from the time of serving the original process on such executor or administrator." Section 209, Revised Statutes 1929 (Sec. 209, Mo. Stat. Ann., p. 137), reads as follows: "If any person commences suit of any kind in the circuit court against an estate, within six months from the date of administration, he may recover judgment but shall be adjudged to pay all costs; *provided*, this section shall not apply to suits in equity." And Section 189, Revised Statutes 1929 (Sec. 189, Mo. Stat. Ann., p. 121), provides: "Any person having a demand against an estate may establish the same by the judgment *or decree* of some court of record, in the ordinary course of proceedings, and exhibit a copy of such judgment *or decree* . . . . to the probate court." [Italics ours.] Under these sections, and the decisions construing them, it is clear that the circuit court has concurrent jurisdiction with the probate court in the matter of establishing claims against an estate. [Bank v. Clifton, 263 Mo. 200, 172 S. W. 388, and cases there cited.] But it is appellant's contention that these statutes have no application to a situation such as presented by this record for the reason that a "demand" must be for an "indebtedness." and that until there has been a settlement and the partnership debts discharged, there is no debt due from one of the partners to the other, citing in support of the latter proposition, Ross v. Carson, 32 Mo. App. 148. That case undoubtedly announces a correct general rule, but we deem it without application under the facts of the case at bar. It must be borne in mind that no administration of the disputed partnership estate has ever been undertaken. In the case just mentioned, suit was brought in the circuit court by the administrator of the estate of the deceased partner against the surviving partner for an accounting, and other relief. The answer admitted the partnership, and alleged that, as surviving partner, he, the defendant, was administering the partnership effects in the probate court. Under these facts, in upholding jurisdiction of the probate court, it was said, "It is warrantable to say that nothing can be due either partner from the partner-

ship effects, no matter how unequally either may have contributed to the partnership fund, *until the partnership debts have been discharged.* These cannot be legally ascertained—certainly they cannot be legally discharged—except through the probate court.'' [Italics ours.] But, see the previous holding of this court in Holman v. Nance, 84 Mo. 674, which was an action brought in the circuit court by the administrator of the individual estate of a deceased partner to recover from the surviving partners an amount ascertained to be due the intestate upon a settlement of the partnership affairs between the surviving partners and the administrator of the deceased partner *without resort to administration.* It was there contended that the administrator ''could make no valid and binding settlement of the partnership estate without administering upon the same in the manner pointed out in the statute; that the partnership estate could only be settled and the interest of the deceased therein ascertained by the method directed in the statutes as to partnership estates and the settlement thereof.'' It was held that the defendants, the surviving partners, were regarded in law as holding so much money belonging to the plaintiff in his representative capacity, and that there was an implied promise to pay it over when demanded. The court said: ''Under the circumstances inferred from the petition the defendants had the right, as surviving partners, to go over and settle up the affairs of the partnership. It seems they did this and acknowledged plaintiff's intestate had $1800 in money as his individual share after settlement of partnership debts. The administrator of the individual estate, to whom it belongs, agrees that this is the true amount, and it does not become defendants to repudiate their settlement and deny his right to receive it.''

As sustaining his contention that it is the fact that the partnership estate is unadministered that vests the exclusive jurisdiction in the probate court, appellant seems to rely chiefly on Ensworth v. Curd, 68 Mo. 282, and Caldwell v. Hawkins, 73 Mo. 450, which follows it. Neither of these cases can be regarded as controlling authority for the reason that both the constitutional and statutory provisions respecting jurisdiction of the probate courts have been changed and altered. Of the particular statute construed in those cases, LAMM, J., in Bank v. Clifton, supra, took occasion to say, ''The act is no longer law, and the doctrines of the case construing it have been burned up by the legislative torch.'' In Ensworth v. Curd, supra, it was held that the circuit court was without jurisdiction over a suit instituted therein whereby it was alleged plaintiff and the intestate, during the lifetime of the latter, were engaged as partners in the purchase and sale of real estate, and wherein an account was stated by the plaintiff of the various sums of money paid out and received by the intestate and himself, respectively, in the purchase and sale of real property, and on other accounts, and in which the plaintiff asked for an ad-

justment of said accounts, and that certain real estate, to which the intestate had taken a deed in his own name, and of which he died seized, be declared partnership property, and subjected to the payment of any balance found to be due on final settlement of their accounts. One of the grounds, if, indeed, not the main one upon which the decision rested, was that the statute (Sess. Acts 1865-66, p. 83) invested the probate court with *exclusive* original jurisdiction "to hear and determine all suits and other proceedings instituted against executors and administrators *upon any demand* against the estate of their testator or intestate." [Italics ours.] In so ruling, the court necessarily took the view that the suit, the nature of which has been outlined, was a demand, within the meaning of the statute. The case is, therefore, against appellant's contention with reference to the nonapplicability of the sections of the present statute with relation to establishing claims and demands in the circuit court. The same is true as to Caldwell v. Hawkins, supra.

Goodson, Admx., v. Goodson et al., Executors, 140 Mo. 206, 41 S. W. 737, also relied on by appellant, was a suit in equity by the administratrix of the individual estate of one of the former partners against the executors of the other partner for an accounting and settlement of the partnership which was alleged to have existed. A demurrer was interposed, and sustained, and on appeal that action was upheld, not on the theory that in no event would such a suit lie, but on the ground that "as the petition shows on its face that plaintiff was guilty of laches . . . it states no cause of action." The court pointed out that the legal effect of the demurrer was an admission of the partnership relation, and that, under the statutes relating to the administration of partnership estates, an ample and adequate remedy was afforded the administratrix of the individual estate for an accounting and settlement of the partnership estate. [This by virtue of the statute, now Sec. 87, R. S. 1929, sec. 87, Mo. Stat. Ann., p. 53, which provides: "Every surviving partner, on the demand of any administrator or executor of a deceased partner, shall exhibit to the appraisers the partnership property belonging to the firm at the time of the death of such deceased partner, for appraisement; and in case the administration thereof shall devolve on such administrator or executor, the said survivor shall surrender to him, on demand, all the property of such partnership, including their books and papers, and all necessary documents pertaining to the same, and shall afford him all reasonable information and facilities for the execution of his trust.] Plaintiff in that case had failed to avail herself of this statutory remedy, and in that connection the court said, "While we do not wish to be understood as holding that the mode provided by statute is exclusive under all circumstances, there ought to appear some very cogent reason why it should not be so held be-

fore the administrator of the personal estate of the deceased partner should be permitted to proceed in equity to compel an accounting and settlement of the partnership.'' Appellant complains that the above language is *dictum;* but, if so, we deem it good *dictum,* in that it announces a sound and correct doctrine, even though it may not have been necessary to a decision of the case. That such doctrine has been recognized and applied by this and other appellate courts in this State, both before and since that decision, is attested by such cases as the following:

Byers v. Weeks, 105 Mo. App. 72, 79 S. W. 485, where the heirs at law of a deceased partner were held to be entitled to maintain a suit in equity for an accounting and settlement against the surviving partner who had fully administered on the individual estate of his deceased partner, but had not administered on the partnership estate.

Bell v. McCoy, 136 Mo. 552, 38 S. W. 329, where the action in the circuit court was for a partnership accounting brought by plaintiff as administratrix of the individual estate of one of the partners, as well as in her capacity as administratrix of the partnership estate against the administratrix of the individual estate of the other partner. After the death of plaintiff's intestate, McCoy, the other partner, in his lifetime surrendered leasehold property of the firm, and secured a new lease to himself. In sustaining a decree for plaintiff, this court said: ''So long as the firm affairs were not wound up, McCoy was bound to account in equity for his management of its property. . . . He could not equitably be permitted to change the firm title into his individual title, except under the obligation to account for advantages thereby gained, and for which his estate has been called upon to respond in the suit at bar.'' [See, also, Costello v. Gleeson, 15 Ariz. 280, 138 Pac. 544; Burris v. Burris, 140 Kan. 208, 34 Pac. (2d) 127, 96 A. L. R. 432.]

It should be noted that whereas the statute (Sec. 87, supra) provides a remedy for the representative of the individual estate where administration of the partnership estate devolves on him, by requiring the surviving partner to surrender ''all the property of such partnership, including their books and papers, and all necessary documents pertaining to the same, and shall afford him all reasonable information and facilities for the execution of his trust'' no corresponding duty is placed upon the representatives of the individual estate where the survivor administers (to say nothing of a situation where the partnership is not only denied, but the books and papers thereof have been lost or destroyed, and where the only assets of the firm consist of profits, all as in the case at bar.) So that, in the instant case, the respondent, if remitted to the probate court to administer the partnership estate, would, under the facts of this record, be confronted with the necessity of suing for and recovering the very

funds involved in this suit. That the circuit court is the proper forum for such an action, there can be no doubt. [Strode, Executor, v. Gilpin, 187 Mo. 383, 86 S. W. 77.] The case just mentioned was a suit for conversion of personal property brought in the circuit court by plaintiff as administrator of the individual estate against defendant, who had filed his bond (and had the same approved) in the probate court, as the surviving member of a partnership which he alleged existed between himself and deceased. It was there contended that, as the probate court had found the defendant was the surviving partner, that finding could not be collaterally attacked by showing the circuit court that no partnership between the deceased and the defendant in the business in question ever existed (and so, as plaintiff contended, the assets in question were the individual property of the plaintiff's intestate at the time of the latter's death.) The contention was ruled against the defendant, the holding of this court being that the issue as to whether the specific personal property in question was assets of the partnership, or belonged to the individual estate of the deceased was determined by the finding in the suit for conversion that there was no partnership.

The doctrine of the case of Kutz v. Dreibelis, 126 Pa. St. 335, is directly in point. There the Supreme Court of Pennsylvania said: "If Kutz had received this money, his estate could be compelled to pay Dreibelis only so much of it as belonged to him, upon a settlement of the partnership accounts. . . . When the estate of a deceased partner is lawfully possessed of a fund which is the sole asset of the partnership, and nothing remains to be done except to state an account between the partners, it need not pay over that fund to the surviving partner. Why should this fund be transferred to Dreibelis, and Mrs. Kutz be compelled to bring an action against him for a settlement of accounts between the partners, when, as we have seen, these accounts may be adjusted in the present action? We discover no necessity for such transfer nor propriety in it. Upon a retrial of this case, the plaintiff may recover such portion of this fund as upon an account settled between the parties appears to belong to him." And so we say in the case at bar. Accordingly, appellant's contention that the circuit court was without jurisdiction of the subject matter must be overruled.

Aside from the question of jurisdiction, just decided, appellant relies upon the following propositions for a reversal: (1) That the plaintiff was guilty of laches; (2) Because the evidence was insufficient to support a finding that a partnership existed; (3) Because the evidence was insufficient to prove the amount of the profits, and (4) Because the evidence was insufficient to prove the amount of plaintiff's withdrawals. In the light of these contentions, it becomes unnecessary to summarize all of the evidence. The record consists of more than

sixteen hundred pages, exclusive of a very large number of exhibits. We take this occasion to say we are thoroughly satisfied with the findings of fact as made by the learned referee, to which further reference will be made in the course of this opinion.

As stated, the jury found the issue of the existence of the partnership relation in favor of the plaintiff. The referee reports that numerous contracts for the construction of sewers, for the grading and paving of streets and highways, and other contracting and construction work in Kansas City, Jackson County, North Kansas City, Kansas City, Kansas, and one sewer construction job at Topeka, Kansas, were made and carried out by the plaintiff and deceased. Practically all of them were taken in the name of deceased, who, with few exceptions, received all moneys that were paid on account of such jobs, and deposited the same in his own account in various banks. The total net profits accruing to the partnership, covering some twenty-seven items, or contracts, but not including their asphalt business, was the sum of $302,046.11. The invoices covering materials used were billed to deceased, and the labor, material and other expenses were, with but few exceptions, paid by him by checks drawn by him on said bank. Both plaintiff and deceased had access to the checks, check stubs, vouchers and invoices covering the business transacted by the partnership. There were no books of account kept by the partnership according to the usual understanding of what constitutes books of account. There was a general superintendent for the partship, named John H. Frew, who did what bookkeeping was done by and for the partnership, except that portion of the business relating to the sale of rock asphalt. He became connected with the firm and worked with it until it was dissolved. He testified for plaintiff, and showed himself to be thoroughly familiar with the various construction contracts which the firm held.

In his amended answer, defendant undertook to interpose the defense of laches, by alleging: " (a) That the plaintiff had failed to institute this action until long after the death of his decedent, and until long after the death of Roudebush and Hopkins, important witnesses in this cause; (b) That no books of account were kept in which were recorded the transactions of the alleged partnership; (c) That any and all checks, stubs, vouchers, and other written evidence of the transactions growing out of, or connected with, the contracts entered into and performed by his decedent, in which plaintiff claimed an interest, had been lost or destroyed; (d) That there was not available to him any evidence, within his knowledge or under his control, that would enable him to contest the plaintiff's claim; (e) That his decedent, during his lifetime, denied that he owed the plaintiff any money or assets, or any interest therein, all of which was known to the plaintiff; (f) That the plaintiff made no effort, during the life-

time of his decedent, to compel him, said decedent, to account to him; (g) That the plaintiff instituted no proceeding, of any kind, to compel an accounting until a long time after his decedent's death; and (h) That, by reason of the aforesaid facts, and the plaintiff's failure or neglect to prosecute his claim and suit against said Thomson, in his lifetime, he became and was guilty of such laches as to, and as did preclude his right to any consideration or relief in a court of equity.''

It will be remembered that the partnership was dissolved about November 1, 1930, and that Thomson died April 6, 1932, and that this suit was instituted the following August. The findings of the referee on the issue of laches are so apposite that we adopt them, as follows: ''Defendant relies largely on the issue of laches in this case. I think the rule is that mere delay in instituting an action does not constitute a defense; that it must be shown that the delay in some way has prejudiced the rights of the party relying on it as a defense. In addition to this, the party pleading laches ought not to be the one directly or indirectly responsible for the delay. The evidence shows that the plaintiff on several occasions insisted that the deceased make a settlement. The deceased put off plaintiff on the ground that he expected to take a loss on the Topeka job. Deceased told the plaintiff he did not know how much he would lose on that job and he did not wish to make a settlement until after the job had been completed and the amount of profit or loss thereon ascertained. The final payment on the Topeka job was not made until after the death of deceased. The evidence also shows that the witness Dempsey on several occasions tried to bring the parties together and to have them work out a settlement. He also tried to induce them to have Kopp (the defendant, as administrator) act as an arbitrator. Plaintiff was willing to have Kopp act as arbitrator but the evidence indicates that Thomson refused to consent to such an arrangement for settlement. Negotiations were carried on from time to time up to death of deceased looking to an adjustment of the controversy between the parties. Plaintiff should not be penalized for delaying to bring suit until he definitely ascertained that the possibilities of an amicable settlement had been exhausted. Plaintiff did nothing to indicate that he had abandoned his claim for his full one-half share of the partnership profits. Under the evidence, I think that any delay in making a settlement was as much and even more the fault of deceased than it was of plaintiff. I think, moreover, that plaintiff has suffered as much harm from the delay as the defendant. If defendant has been handicapped in presenting his case, the same is also true as to plaintiff. Defendant's death made it impossible for plaintiff to testify in this case over the objection of defendant. Such an objection was made and sustained to plaintiff's testimony when he offered it on the trial of the issue of partnership before this court. The records which deceased had and

which would constitute the original and otherwise the best evidence of whether the partnership experienced a profit or loss from its business and the amount thereof are lost or destroyed, and no one contends that plaintiff was in any way responsible for this loss or destruction. If any of these records remain extant in the possession of income tax authorities, defendant or the deceased may be presumed to have placed them in such possession and defendant has apparently made no effort to produce them for the purpose of this accounting.''

■ There was an abundance of uncontradicted evidence to establish the existence of the partnership as alleged. Indeed, it may be observed that it would be difficult to understand how, on the record before us, the jury could have found otherwise than it did on that issue. Its finding was adopted by the trial court, and with its correctness we are satisfied. The finding does not rest upon admissions of Thomson to the effect that he and plaintiff were partners in the business. We do not agree with appellant that such admissions have no corroborative value, and that it has been so held by such cases as Hely v. Hinerman, 303 Mo. 147, 260 S. W. 471; Miller v. Miller, 311 Mo. 110, 277 S. W. 922, and Wittling v. Schreiber (Mo. App.), 202 S. W. 418. In none of these cases were the admissions in relation to the existence of the partnership made by the party sought to be charged. ''It is clear that before one partner can be charged with the admission of another, the partnership relation must be shown— and that by other evidence than the admission itself. . . . The admission, *per se* can be received only to affect the person making it. It becomes admissible against the partnership as such, or against other partners, only upon such proof of the relationship as makes plain the probative connection.'' [Jones Commentaries on Evidence (2 Ed.), sec. 935, p. 1726.]

■ The assignments that the evidence was insufficient to prove the amount of the profits, or the amount of plaintiff's withdrawals will be considered together. It would serve no useful purpose to undertake to summarize the evidence introduced touching the many partnership transactions. As above indicated, the record is very voluminous. Practically all of the evidence introduced was offered by plaintiff. We have gone over it, and arrived at the same conclusion the referee reached, and by the trial court on the exceptions to his report. The witness Frew who was familiar with the partnership transactions testified that, by direct payments, from Thomson to Pryor, the latter had not received to exceed $30,000. However, the referee found that he had received an item of $13,400 from the Kansas City Park Board, as well as two checks aggregating $70,000 on the Milton Thompson road contract, which project was financed by Pryor in part out of such checks, and the expenses exceeded the amounts so received. There was another item of $1950 from North Kansas

City Development Company payable to T. P. Thomson, endorsed by both Thomson and Pryor, and which the referee found had been received by Pryor. A similar item of $4768.64 from Tobin Construction Company was found by the referee to have been received by respondent. The report of the referee recites: ''The total of all these payments to Pryor amounts to $51,726.31, which amount should be charged to and deducted from his interest in the partnership. Deducting this sum of $51,726.31 from one-half of the total profits of the partnership amounting as aforesaid to $351,025.16, I find that the amount still due and owing from the defendant as administrator of the estate of Thomson to plaintiff for profits of the partnership is $123,786.27.''

The decree having been for the right party, and for a sum shown by the overwhelming weight of the evidence to be the minimum for which recovery should be had, it is affirmed. All concur.