DUNLAP, *Administrator, Appellant,* v. GRIFFITH.

Division Two, November 21, 1898.

1. **Ejectment**: COTENANTS: ADVERSE POSSESSION: LIMITATIONS. Where the defendant has for ten years claimed adversely to plaintiff, has been in the open and exclusive possession of the property, and the plaintiff had full notice of defendant's adverse and exclusive possession, it is immaterial that both parties were named as grantees in the deed.

2. ——: ——: ——: VERBAL DISAVOWAL. The law does not impose on one grantee in a deed who has for many years by overt acts exercised exclusive possession of property adversely to the other grantee, the burden of proving a distinct verbal disavowal of his cotenant's title.  It is sufficient that the acts, in exercising possession and ownership, are themselves overt and notorious.

3. ——: ——: ——: EVIDENCE: DECLARATIONS BY COTENANTS. The declarations of that one of two grantees named in a deed who is out of possession are not admissible if made while not in possession of the land, but the statements of the other made while in possession and asserting title are admissible as verbal acts tending to characterize his possession.

*Appeal from Buchanan Circuit Court.*—HON. H. M. RAMEY, Judge.

AFFIRMED.

*Jas. W. Coburn* and *C. A. Mosman* for appellant.

(1) Ordinarily where there is no consent the law presumes that "an entry and possession by a tenant in common is not adverse to the cotenant, but that the possession is in support of the common title." *Rodney v. McLaughlin,* 97 Mo. 431; *Long v. McDow,* 87 Mo. 197; *Hill v. Allen,* 12 Mo. App. 580. (2) The exercise of the usual acts of ownership, such as a tenant in common has the right to exercise, as the payment of taxes, the taking of stone and timber from the land, the putting of new portions of it in cultivation, the collection and appropriation of the rents, the planting of orchards, are not evidence of ouster or adverse possession. *Railroad v. Miller,* 115 Mo. 163; *Watson v. Union Co.,* 50 Mo. App. 645; *Rodney v. McLaughlin,* 97 Mo. 431; *Goodwin v. Goodwin,* 69 Mo. 617. (3) If the possession in its inception was friendly, then it could not be converted into one of hostility by a mere mental intention. Some notice or act indicative of an intent to disseize was necessary. *Spencer v. O'Neill,* 100 Mo. 49; *Campbell v. Gas Co.,* 84 Mo. 352; *Comstock v. Eastwood,* 108 Mo. 48; *Coombs v. Goldsworthy,* 109 Mo. 160; *Budd v. Collins,* 69 Mo. 137; *Wilkinson v. Thompson,* 82 Mo. 329; *Estes v. Long,* 71 Mo. 609; *St. Louis v. Priest,* 103 Mo. 656. (4) The law requires "a clear, positive and continuous disclaimer and disavowal of the title as a tenant in common and an assertion of an adverse right and claim." *Hamilton v. Boggess,* 63 Mo. 249. (5) After 1893, with Dan's knowledge, the house and barn were insured in the

names of Henry Griffith and Bland; Dan insuring only the personal property in the house in his own name. Throughout the testimony, it appears that witness after witness was asked and required to state the claims made by Mr. Daniel Griffith to his land. None of these claims were ever made in the presence of Henry M. Griffith. Such evidence could not have been competent testimony for the defendant and incompetent testimony for the plaintiff. (6) The law demands a verbal expression, a disavowal of the title, an assertion of an adverse right in himself, and this verbal expression, this disavowal of title, this assertion of an adverse right in himself, must be made to the cotenant; nothing less will satisfy the law. *Estes v. Long*, 71 Mo. 609; *Rodney v. McLaughlin*, 97 Mo. 431. (7) Dan Griffith went on the land as a tenant in common and made the improvements as such and not on the strength of the alleged verbal gift. *Dougherty v. Harsel*, 91 Mo. 161; *West v. Bundy*, 78 Mo. 407; *Anderson v. Shockley*, 82 Mo. 250; *Anderson v. Scott*, 94 Mo. 637; *Brownlee v. Fenwick*, 103 Mo. 186.

*W. B. Norris* and *Benjamin Phillip* for respondent.

(1) It is not claimed by appellant's counsel that the instructions failed to correctly state the abstract proposition of law therein contained. No plainer case of adverse possession between cotenants could be made than that presented by the evidence in this case. *Hutson v. Hutson*, 139 Mo. 229; *Warfield v. Lindell*, 38 Mo. 561; *Warfield v. Lindell*, 30 Mo. 272; *Lapeyre v. Paul*, 47 Mo. 586; *Peck v. Lockridge*, 97 Mo. 549; *Rozier v. Johnson*, 35 Mo. 326. (2) The acts of the defendant "were overt and notorious, and they were unquestionably of such a character as to impart information and give notice to the cotenant that his rights in the

premises were invaded and denied. *Hutson v. Hutson*, 139 Mo. 236; *Warfield v. Lindell*, 38 Mo. 562. (4) Appellant is in no position to insist in this court that the trial court submitted an issue to the jury in respondent's instructions not presented by the evidence, because he himself requested the court to give, and the court did give in his behalf instructions identical with those of the respondent, submitting exactly the same issue to the jury. *Penwick v. Dowling*, 50 Mo. App. 516. (5) A plaintiff can not submit his case upon theories presented by his own instructions, and then put the court in error for giving like instructions on behalf of defendant, submitting the same theories to the jury, even though they are erroneous. *Hames v. Braidwood*, 82 Mo. 610; *McGonigle v. Daugherty*, 71 Mo. 259; *Thorpe v. Railroad*, 89 Mo. 650; *Harper v. Morse*, 114 Mo. 317.

GANTT, P. J.—This is an action of ejectment by the administrator of Henry M. Griffith, deceased, against Daniel Griffith for the recovery of the undivided one half of one hundred and forty-eight acres of land in Buchanan county. The action was brought in pursuance of an order of the probate court under section 129, Revised Statutes 1889. The defenses are, *first*, a gift of the land by Henry M. Griffith to his brother, the defendant, in his lifetime; *second*, adverse possession for the statutory period. While counsel for the parties draw conclusions radically different, the evidence is practically unquestioned. It appears that Henry M. Griffith, in 1870, resided in Buchanan county. He was a man of considerable means. Daniel Griffith, his brother, lived in Kentucky. At that time the land in controversy belonged to Hurt and Pense. The negotiation for the land was conducted by Henry Griffith. When he went to examine the land he said

to Hurt: "I want to buy a place for my brother, Dan, who is in Kentucky, if I can find one that I think will suit him." The purchase was agreed upon and Henry Griffith said he would bring a notary out to the farm to make the deed. Esquire Pettigrew was engaged to prepare the conveyance and undertook to do so in his office, but when he arrived at the farm found he had made a mistake in the numbers, whereupon he tore it up and began to draw another. While he was thus employed Henry Griffith and Hurt went out to look at the farm and Henry then said to Hurt, "If this place don't suit Daniel I don't know where he will find one in Buchanan county that will suit him."

When they came back to the house the justice had finished the deed and had inserted therein the name of *both* Henry M. Griffith and Daniel Griffith as grantees. He began reading the deed to the parties in interest and when he came to the names of the grantees, Henry remarked: *"Captain, my name ought not to be there; the land is for Dan."* The scrivener told him that he had no other blank with him, whereupon Henry replied that *"that was all right; he would fix it all up when his brother came."* With that the deed was executed, and Henry paid a portion of the purchase price. It is not shown who paid the remainder.

Shortly afterward Daniel Griffith moved to Buchanan county, and Henry met him at the station, moved him, and his family to the farm, put him in possession of it, and from that day to this Daniel Griffith has been in exclusive possession of all the property.

Henry Griffith owned a farm in the immediate neighborhood, only two miles and a half from the land in controversy, upon which he lived from 1870 until he died in 1893.

Shortly after Daniel took possession of the farm, he began setting out an orchard, and making other improvements. Twenty years ago he planted seventy fruit trees and from time to time since then has added to the orchard until it now consists of about five hundred trees, all of the present value of about $2,500. They were paid for entirely by Daniel Griffith.

Immediately after the land was purchased in 1870 it was assessed for taxation in the name of Daniel Griffith and it has been assessed in that way ever since. It is admitted that Daniel Griffith paid the taxes on all the property from the time the land was purchased up to the date of the trial. The evidence shows that from the day Daniel took possession of the property he occupied it exclusively as his home, cleared it, cultivated it, improved it, managed and controlled it exclusively as he saw fit; that he rented out portions of the land and received the rents and profits; that he has never paid any rent to Henry Griffith, nor did Henry ever demand any; that he received all of the rents and profits and never accounted to Henry Griffith for any part of them and Henry has never claimed any interest in the property; that fourteen years before the beginning of this suit Daniel erected a large frame dwelling upon the land at a cost of $1,200 and a barn at a cost of $259, and other improvements; that he had cisterns dug and fences built; that all of these improvements were paid for by Daniel; that Henry was never consulted regarding them at any time; that he visited Daniel frequently and knew the improvements were being made; that he contributed nothing to their cost; that he was never in possession of the property; that he never exercised any act of ownership or control over it or any part of it, and never claimed the right to do so; that he paid none of the taxes; that Daniel Griffith, from the time

he first went into possession of the property until the day of the trial, claimed the land as his own; that Henry Griffith knew that Daniel claimed the property as his own and whenever he referred to the farm he always called it "Dan's farm." In 1893 Daniel sold an undivided half of the property and Henry remarked that "it was too bad that Daniel in his old age only had eighty acres of land left."

The evidence thus tended to show not only that adverse holding of the defendant, Daniel Griffith, but also that Henry Griffith disavowed any interest in the land, and up to the day of his death never pretended that he had any interest in it. Indeed, the only evidence in the case that Henry Griffith had any interest in the land at all is the deed conveying the property from Hurt and Pense, and it was proven, without dispute, by Hurt, who owned the land, and by the scrivener, who drew the deed, that Henry's name appeared in the deed as a grantee *only on account of a mistake of the scrivener.*

Upon this evidence the court, at the instance of both plaintiff and defendant, submitted the question of adverse possession for the statutory period, and the question of the gift of the land by Henry to Dan, to the jury. The triers of the fact found for the defendant, and plaintiff brings this case here, insisting that the court erred in giving defendant's instructions 1 and 2, not because they do not correctly state the abstract propositions of law therein contained, *but because it is claimed there is no evidence* upon which to base them.

The remaining errors assigned are that the court erred in giving defendant's instruction number 3 and erred in admitting declarations of the defendant while in possession of the property, showing that he claimed the property as his own.

I.   Notwithstanding plaintiff directly and explicitly tendered the issue of adverse possession by his instructions he now insists that the circuit court committed grievous error in submitting that issue to the jury in defendant's instructions numbers 1 and 2. That we are not in error as to this we append the following instructions given at the request of plaintiff:

"The court instructs the jury that when one cotenant makes improvements on land held in common such improvements are presumed to be for the common benefit of all the cotenants, and, although you may believe from the evidence that defendant made improvements on the lands mentioned in the petition and evidence, you can not find for defendant by reason of adverse possession from that fact alone unless you further believe from the evidence that such improvements were of such a nature that they were of themselves an assertion of the fact to Henry M. Griffith of such adverse possession and inconsistent with tenancy in common."

"The court instructs the jury that if they believe from the evidence that the defendant and plaintiff's decedent, acquired title to the whole of the tract of land described in plaintiff's petition by deed from Hurt and Pense dated October 31, 1870, introduced in evidence, and subsequently defendant conveyed his undivided interest to said whole tract to Richard C. Bland by deed and that defendant was in possession of the undivided interest of this suit, viz., December 6, 1895, then you must find for plaintiff for said undivided interest so conveyed to Henry M. Griffith, unless you further believe from the evidence that the defendant is entitled to said undivided interest by reason of adverse possession thereof for the period of ten years prior to the institution of this suit by a consummated gift as hereinafter explained."

"The court instructs the jury that if they believe from the evidence that defendant and Henry M. Griffith acquired title to the lands in controversy by deed from Hurt and Pense dated October 31, 1870, and introduced in evidence, and that subsequently said defendant conveyed to R. C. Bland his undivided interest in said lands by deed dated April 15, 1893, introduced in evidence, then you must find for plaintiff, unless you further believe from the evidence that defendant is entitled to your verdict by reason of title acquired by adverse possession or by gift, as hereinafter explained in these instructions."

"If the jury believe from the evidence that defendant took possession of the land in controversy as a tenant in common with Henry M. Griffith, then the law is that such possession of defendant was the possession of both him and said Henry M. Griffith, or if you believe from the evidence that defendant took possession with the consent of said Henry M. Griffith, and continued in possession thereof as such cotenant, or under the permission of said Henry M. Griffith, the law is that while said defendant so continued to hold such possession he can not claim to hold by adverse possession."

"If the jury believe from the evidence either that the defendant took possession of the land in controversy as tenant in common with Henry M. Griffith, or that he took possession of the land with the permission of the said Henry M. Griffith, then the law is that such possession is presumed to continue until such possession became adverse, and in such case before you can find that such possession became adverse to said Henry M. Griffith, you must believe from the evidence that defendant, ten years before the institution of this suit, which was on December 6th, 1895, made some positive and distinct assertions of a right to said

lands hostile to Henry M. Griffith, and of which said Henry M. Griffith had notice, or that defendant did and performed such acts of possession and ownership as indicated to the world at large and to Henry M. Griffith that defendant claimed the said lands as owner in his own right, and not subordinate to any other person, but inconsistent with the right of ownership in said Henry M. Griffith.''

Without encumbering the record with others, these sufficiently indicate that plaintiff himself deemed the evidence of adverse possession of sufficient probative effect to qualify all his propositions of law by the proviso that if the jury found defendant, for ten or more consecutive years before the institution of this suit, on December 6, 1895, had been in the open, notorious and exclusive possession of the lands in controversy, claiming during all of said time to own all of said property as his own and adversely to any claim or ownership or interest on the part of Henry M. Griffith and that said Henry M. Griffith knew during all said time that defendant was in the ‘exclusive possession of all of said property and had notice of the fact (if the jury believed it was a fact) that defendant claimed to own all of said lands as his absolute property, adversely to any interest therein on the part of said Henry M. Griffith for more than ten years before this action was commenced, then it was immaterial whether said property was purchased and the deed thereto taken in the name of both Henry and Daniel Griffith and the verdict must be for defendant. Having conceded that it was a proper case for instructions on adverse possession and being unable to point out any error whatever in the instructions themselves it would seem that plaintiff has little ground to stand on as to this assignment. It would be manifestly unjust to permit plaintiff to have the case submitted upon theories advanced by himself and thus reverse

the judgment because instructions on the same theory had been given for defendant. *Holmes v. Braidwood*, 82 Mo. 610; *Thorpe v. Railroad*, 89 Mo. 650; *Wilkins v. Railroad*, 101 Mo. 105; *Reardon v. Railroad*, 114 Mo. 384.

But it is not necessary to put the propriety of defendant's instructions on adverse possession upon the ground of plaintiff's estoppel. There was much evidence that Daniel Griffith with the actual knowledge of his brother held and asserted the exclusive, continuous possession of this land as his own. His brother Henry lived only a mile or two distant, was very often at his house and saw Daniel making lasting and permanent improvements on the land out of his own means; was not consulted regarding them; made no objection or protest nor expressed any approval; was never heard for twenty years to claim in Daniel's presence any right or interest in the land; never received or claimed a cent of rent or profit from it, but stated that the deed was erroneously drawn when his name was inserted as grantee and always alluded to the farm as Dan's. These acts of Daniel Griffith were, in the language of this court in *Warfield v. Lindell*, 38 Mo. *loc. cit.* 580, and recently approved in *Hutson v. Hutson*, 139 Mo. 236, "overt and notorious, and they were unquestionably of such a character as to impart information and give notice to the cotenants that their (his) rights in the premises were invaded and denied and that a possession was claimed and a use made of the property, which was utterly inconsistent with the presumption that the defendant's possession was their possession also, and consequently that the unity of possession was dissolved. Upon such evidence as this we think the jury might well be warranted in finding that there had been an actual ouster."

The earnest contention of counsel for plaintiff that

the law imposed upon defendant as a tenant in common with Henry Griffith the burden of proving a distinct verbal disavowal of Henry's title in said land to Henry himself, and could not be satisfied by proof of acts and conduct which would notify a person of ordinary intelligence of Daniel's claim of adverse possession is not tenable.   While it may be true that if the adverse claim is altogether verbal, unaccompanied by overt acts, such assertion must be made to or communicated to the ousted cotenant.   Yet, "when the act is of such a nature as the law will presume to be noticed by persons of ordinary diligence in attending to their own interests and of such an unequivocal character as not to be easily misunderstood, it is not necessary that any positive notice should be given to the cotenant, nor does it devolve upon the possessor to prove a probable actual knowledge on the part of the cotenant.   It is sufficient that the act itself is overt, notorious; and if the cotenant is ignorant of his rights or neglects them, he must bear the consequences."   *Warfield v. Lindell,* 30 Mo. 282; *Hutson v. Hutson,* 139 Mo. 236.

II.   As to the admission and exclusion of evidence. The court correctly ruled that Henry Griffith's declarations were inadmissible *because he was not in possession of the land* when the proposed declarations were made, and the statements of Daniel Griffith asserting title while in possession were admissible as verbal acts tending to characterize his possession.   *Burgert v. Borchert,* 59 Mo.  80; *Railroad v. Clark,* 68 Mo.  371; *Lemmon v. Hartsook,* 80 Mo. 13; *Miss. Co. v. Vowels,* 101 Mo. 225.

The cause having been submitted to the jury under proper instructions and there being material and substantial evidence to support the finding the verdict of the jury must stand.

The judgment is affirmed.   SHERWOOD and BURGESS, JJ., concur.