ALVIN STEPHENS and MYRTLE LONG, Devisees of Last Will of G. M. STEPHENS, v. BLACK FOWLKES, ZULA FOWLKES and NORA STEPHENS, Appellants.—92 S. W. (2d) 617.

Division One, March 10, 1936.

*Von Mayes* and *C. E. Bragg* for appellants.

528

*Ward & Reeves* for respondents.

530

HYDE, C.—This is a suit to try and determine title and for eject-
ment involving about eleven acres of land adjoining Caruthersville
in Pemiscot County. Defendants' claim is based on adverse pos-
session. Trial by jury was waived and the court found for plain-
tiff, who has died since the trial. Revival has been had in the
names of the devisees under plaintiff's will. Judgment was entered
adjudging plaintiff to be the owner of the land and entitled to pos-
session. Defendants have appealed therefrom, and contend here
that "adverse possession was shown as a matter of law."

The land was conveyed by three separate deeds (five acres, 1896,
six acres, 1897 and one-half acre, 1901) to G. M. Stephens, the orig-
inal plaintiff and the father of all of the present parties hereto.
There was a house and other improvements on the land in 1896,
and Stephens and his wife lived there until 1910, when they sep-
arated. During that time Mr. Stephens set out an orchard of several
acres of fruit trees and made other improvements. There was a
divorce suit between Mr. and Mrs. Stephens after 1910, which ter-
minated without either of them being granted a divorce. Stephens
went to live with his son Alvin, while Mrs. Stephens and two of
their daughters, defendants herein, continued to live on the land in
controversy here. The other daughter, Mrs. Long, was married prior

to their separation. Mrs. Stephens died in 1931, and defendants' claim is that she had obtained title by adverse possession. The court, at their request, gave a declaration of law stating their right to recover upon this theory. Defendants also made the claim that the land was purchased with Mrs. Stephens' money but they had no proof to trace her money into it and did not request a declaration of law upon that theory of recovery. It is held that under married women's statutes a wife is invested with sufficient capacity to hold land adversely to others and, where she is deserted or abandoned by her husband, she may acquire title by adverse possession against him. ■ There is also authority to the contrary, especially where a husband and wife are merely living separate and apart without fault of the one against whom the claim is made. [1 R. C. L. 755, sec. 83; 30 C. J. 579, sec. 112; Union Oil Co. v. Stewart (Cal.), 110 Pac. 313, Ann. Cas. 1912A, 567, and note; Kelley v. Kelley (R. I.), 153 Atl. 314, 74 A. L. R. 135, and note; Big Blaine Oil & Gas Co. v. Yates (Ky.), 206 S. W. 2; Potter v. Adams, 125 Mo. 118, 28 S. W. 490; Warr v. Honeck (Utah), 29 Pac. 1117.] The trial court decided that a situation existed in this case under which Mrs. Stephens could have acquired title by adverse possession against her husband, and we hold that the facts justify that view. However, the court decided against defendants so we must consider that the court found that Mrs. Stephens' possession was not adverse. Since the case is an action at law its finding is conclusive here if there is substantial evidence to support it. [Bell v. Barrett (Mo.), 76 S. W. (2d) 394.]

We must, therefore, decide whether defendants' evidence herein was conclusive as to the question of adverse possession. There is evidence to show that the land was at all times assessed to Mr. Stephens; that Mr. Stephens paid the taxes and took the receipts up to and including those due and payable in 1916; that Mrs. Stephens had the receipts for the taxes for every year thereafter except 1931; that in 1921 there was a judgment rendered against the property on a special tax bill for street improvement for $2000; that there was later special tax bill for $240; that Mr. Stephens paid the amount of the judgment; that Mrs. Stephens first paid it and Mr. Stephens later gave the money to her attorney; that Mrs. Stephens had the judgment assigned to defendants, her daughters, when she paid it; and that the judgment was satisfied of record by them December 2, 1927, after the money had been collected from Mr. Stephens. There was also evidence that, before they were separated in 1910, there had been arguments between Mr. and Mrs. Stephens about who had originally paid for the property; that Mrs. Stephens said she paid for it with money she got out of her own property; that she had refused to sign a deed to sell part of it; that Mr. Ste-

phens claimed he owned it; that he said "it was his money, his place;" that Mrs. Stephens after their separation "claimed this property as her own;" that she said "she bought the land from Hunter and paid her own money for it;" that "the first five acres was paid in gold . . . there was a pocketbook of gold . . . to buy a new home in Caruthersville;" that "when that last six acres was bought he (Mr. Stephens) come to mammie (Mrs. Stephens) and asked for the money and they counted it out right there in the house" (the five acres and the one-half acre were purchased from William Hunter and the six acres from M. C. Cunningham); and that Mrs. Stephens said the deed was first made to her, but to get her husband "to move to Caruthersville that she had to have that deed sent back and put in his name, the deed was supposed to be made in her name and his together, and it was not." It was shown that Mrs. Stephens had eighty acres of land of her own which her father and mother had given to her but that this was not sold by her until 1901. It was further shown that Mr. Stephens "stayed away from home a whole lot of time for years before" the final separation; that after the separation Mr. Stephens "never did anything toward supporting" his wife and the two daughters, defendants, who remained with her; that when he left he took with him "horses, cows, mule, hogs" and "all of the fences;" that his wife and daughters "made the improvements on the place and kept it in repair;" and that he "did not pay for any of the improvements or repairs." Alvin Stephens, the son and one of the substituted plaintiffs, testified that his mother claimed that she paid for the land but that he never heard her "make any statement that she owned the land."

The court stated in its declaration of law that Mrs. Stephens would be entitled to hold the land upon the theory of title by adverse possession if the court found that "plaintiff and his wife permanently separated and ceased to dwell together as husband and wife, and thereafter plaintiff did not contribute to her support, nor occupy the land in controversy, and that after said separation said Sarah E. Stephens continuously for more than ten years was in the actual possession of said land, claiming same as her own, and plaintiff knew of such possession or claim." But the court nevertheless found "that the whole title in and to said land is well vested in the plaintiff," and adjudged him to be the owner and entitled to possession thereof. The finding of the court herein must be treated the same as a verdict of a jury. Defendants rely upon adverse possession to overcome record title. "This is an affirmative defense, and the burden of proof is on defendant as to all the elements entering into adverse possession, such as length of time, continuity, being open, and under claim of ownership. . . . Where defendant's evidence is

all oral, as here, and not absolutely free from all doubt, even if there is no countervailing evidence, the finding of the court is not open for review here. . . . In actions at law the weight even of undisputed parol evidence is for the triers of fact, and their finding is conclusive on appeal." [St. Louis-San Francisco Ry. Co. v. Dillard, 328 Mo. 1154, 43 S. W. (2d) 1034.] We must hold that the matter of the hostile character of Mrs. Stephens' possession was not free from all doubt; that adverse possession was not conclusively shown as a matter of. law; and that we cannot, therefore, reverse the judgment on that ground.

■ Defendants, however, also assign as error the ruling of the court refusing to permit defendant Zula Fowlkes to testify that Mrs. Stephens refused to allow Mr. Stephens to come upon or use the land. The court sustained plaintiffs' objection to a question seeking to elicit testimony of this nature, whereupon the following colloquy occurred:

"MR. MAYES: We want to show that we claim the property through adverse possession. MR. WARD: Here is a man and his wife, and the law requires him to furnish her a home, she couldn't accept that home and then claim to own it by limitation, he was required to furnish her a home until they were divorced and to support her. BY THE COURT: It was their home, both of their homes until divorced; I don't think that would prove anything. MR. BRAGG: He abandoned that home and established his home at some other place. MR. WARD: That wouldn't give title to property; this man and his wife couldn't live together. BY THE COURT: I don't think that is competent; the court will sustain the objection. MR. MAYES: The defendant excepts to the court's refusal to permit the defendants to show by this witness that her mother, during the twenty years' separation, refused to permit her father to return and live on this property."

The witness was thereafter permitted to answer a question as to what her mother said "to people in general about her ownership of this property." Another witness testified that Mrs. Stephens, during all the time since about 1911, "claimed this property as her own, that her money paid for it." It would not, of course, make any difference what her reason for claiming title was if she did in fact claim it against the world. If she claimed that she had paid for it that was certainly a good basis for a claim to own the land and to assert such claim against the record title. It was essential for her to show that she was, in fact, making a hostile claim of ownership against her husband's record title. Since they lived there together as husband and wife, her possession was not in its inception hostile to his and it could not become adverse "without a distinct and open disavowal" of his title. [2 C. J. 124, sec. 210,

and Missouri cases cited.] It would seem that the very purpose of the excluded evidence was to show that the place was no longer "both of their homes until divorced;" and that Mrs. Stephens was giving her husband notice that she was no longer holding possession of it as a home "he was required to furnish her," but was claiming it against him in her own right. Her attitude toward his use of the property for any purpose was therefore competent. If he did not come on the place merely because he did not care to see his wife, or if she wanted him to stay away merely because his presence was distasteful or irritating to her, that would not be sufficient basis for such hostile adverse possession and claim of title as would be required to prevail over his record title. However, if she refused to let him come on the place because she claimed that she owned it and brought to his attention such a hostile character of possession based upon her claim of title over his, in ordering him to stay off the place, that would certainly be sufficient to start the Statute of Limitations to run so as to require earlier action on his part than this suit.

Declarations could not prove title. Nevertheless, both the acts and the declarations of a person in possession of land, even when made to third parties, are admissible to show the hostile character of the possession and to show the intention with which the possession was taken. [Dunlap v. Griffith, 146 Mo. 283, 47 S. W. 917; Swope v. Ward, 185 Mo. 316, 84 S. W. 895; Allen v. Morris, 244 Mo. 357, 148 S. W. 905; Heynbrock v. Hormann, 256 Mo. 21, 164 S. W. 547; McAdams v. Austin (Mo. App.), 72 S. W. (2d) 513; 2 C. J. 269, secs. 603-604; 1 R. C. L. 703, sec. 16.] Defendants were not permitted to go into this matter at all. Certainly evidence of Mrs. Stephens' statements and acts of ownership in the presence of and directed to or against her husband should have been admitted. We hold that the ruling of the court excluding this testimony, thereby refusing to give any consideration to these matters, unduly restricted the scope of defendants' evidence and constituted prejudicial error against them.

We further sustain defendants' contention that the court should have permitted them to show that Mrs. Stephens paid the taxes with her own money. This did not alone prove adverse possession but it was a proper circumstance to be considered. [2 C. J. 271, sec. 605.] While it was shown that the tax receipts were in her possession and they were admitted, evidence of Mr. Stephens was admitted that he paid the taxes "all the way through . . . except two years held back for a certain purpose of getting things straightened out." Apparently, since he did not have all these receipts, he meant to claim that he furnished the money to pay the taxes, so that this was a controverted matter. Other matters com-

plained of in the admission and exclusion of evidence will not likely occur at another trial.

The judgment is reversed and the cause remanded. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.