FRANCIS M. BARNES v. THE BOATMEN'S NATIONAL BANK of St. Louis, a Corporation, Executor of the Estate of HUGH W. THOMASSON, Deceased, Appellant.—No. 40000.—199 S. W. (2d) 917.

Division Two, February 10, 1947.

Motion for Rehearing or to Transfer to Banc Overruled, March 10, 1947.

*Franklin E. Reagan* and *Lehmann & Allen* for appellants.

*Fordyce, White, Mayne, Williams & Hartman, James T. Blair, Jr., Geo. O. Durham* and *Clifford Greve* for respondent.

ELLISON, J.—The Boatmen's National Bank of the City of St. Louis, executor of the estate of Hugh W. Thomasson, deceased, appeals from a judgment of the circuit court of that city entered on appeal from the probate court. The cause concerns the validity of a prior judgment of the circuit court—for $15,000—rendered against the appellant executor and in favor of Dr. Francis M. Barnes in 1940, in a suit brought by the latter directly in the circuit court for services rendered by him as a psychiatric expert to the former administratrices of the estate of said decedent in certain litigation before his will was found and the appellant executor appointed. This first Barnes judgment, as we shall call it, was affirmed by this court in 1941, in Barnes v. Boatmen's National Bank, 348 Mo. 1032, 156 S. W. (2d) 597. But the contentions now made were not presented in that case.

This first Barnes judgment not only fixed the amount of recovery at $15,000, but further directed that it be certified to the probate court to be there classified and paid as a cost of administration. It

was so certified, and was classified by the probate court accordingly. Thereafter, in 1944 the appellant executor filed in the probate court a motion to strike that Barnes judgment, embodying Dr. Barnes' claim, from the probate files on the ground that the circuit court had no jurisdiction to render it. The motion was sustained by the probate court and Dr. Barnes appealed to the circuit court. The circuit court adjudged that the order of the probate court be set aside, and that the first Barnes judgment be reinstated in the probate court records as it stood before it was stricken out.

This second Barnes judgment is the one from which the appellant executor prosecutes the instant appeal. Its sole contention is that under Art. VI, Sec. 34, Const. 1875 (in force at the time) creating and defining the jurisdiction of probate courts, the circuit court had no jurisdiction over the subject matter when it rendered the first Barnes judgment, in consequence of which that judgment was void and subject to collateral attack now, and cannot be treated as res judicata although the jurisdictional question was not raised when the first Barnes judgment was rendered. We rule the case under the Constitution of 1875 without deciding or even considering whether the result would be the same or different under the Constitution of 1945.

Art. VI, Sec. 34, Const. 1875, on which appellant relies, provided for probate courts [in substitution for county courts under the Constitution of 1865] and declared that they should ''have jurisdiction over all matters pertaining to probate business, to granting letters testamentary and of administration . . . settling the accounts of executors, administrators . . . ; and the sale and leasing of lands by administrators, . . . '' And two years later, by Laws Mo. 1877, p. 229, these courts were established, and their jurisdiction was defined in the very language of the Constitution, by what is now Sec. 2437.[1]

 It will be observed this Constitutional provision and statute did not say the jurisdiction of the probate courts should be *exclusive*. And there are reasons for thinking it was not in some instances. For Sec. 22 of the same Art. VI provided that circuit courts should have ''such *concurrent* jurisdiction with . . . inferior tribunals . . . *as is or may be* provided by law.'' And that probate courts were regarded as ''inferior tribunals,'' was made clear by Sec. 23, next following, which provided that circuit courts should ''exercise a superintending control over . . . probate courts . . . and all inferior tribunals in their respective circuits.'' Furthermore, after these constitutional provisions were adopted as a part of the Con-

---

[1] All references to our statutes are to R. S. Mo. 1939 and same section numbers in Mo. R. S. A.; and italics in quotations are ours—all unless otherwise indicated.

stitution of 1875, numerous statutes were passed (or continued) which threw light on the Legislature's interpretation of those provisions; and a number of decisions bearing thereon were rendered by this Court, some of which appear to be conflicting.

Appellant maintains that notwithstanding Art. VI, Sec. 34, Const. 1875, supra, did not say the probate court's jurisdiction over matters of probate business should be exclusive, nevertheless it was exclusive. This contention is divided into two parts. First, its brief points to decisions holding the probate courts had exclusive jurisdiction over *all* matters of probate business. We shall refer to only part of them.[2] Second, as against several statutes which plainly gave the circuit court jurisdiction over the *establishment* of claims or demands against the estates of decedents, appellant answers that those statutes apply only to strict statutory *"demands"* of creditors covering some debt or obligation created during the lifetime of the decedent; and *not* to claims arising after his death as expenses of administration—which need not be classified in one of the six classes fixed by Sec. 181. Appellant says Dr. Barnes' claim and first judgment was of the latter character. On this point its brief cites a number of decisions. We shall consider them later in this opinion.

In order that the statutes referred to in the last two paragraphs may be kept in mind as we proceed, we point them out now. Four years after the adoption of the Constitution of 1875, the present Sec. 2100, dealing generally with the jurisdiction of circuit courts, was enacted as Sec. 1102, R. S. 1879. Paragraph 2 thereof, worded exactly as now, conferred on circuit courts: "Exclusive original jurisdiction in all civil cases which shall *not* be cognizable before the county courts, *probate courts,* and justices of the peace, and *not* otherwise provided by law." This paragraph was the same as the corresponding paragraph of Sec. 2, Chap. 136, G. S. 1865, except that the words "probate courts" were inserted, to conform ▮ to the new Art. VI, Sec. 34, Const. 1875. The necessary converse implication of Sec. 2100(2) is that the original jurisdiction of circuit courts may not be exclusive (that is, may be concurrent) in civil cases which *are* cognizable by probate courts, or when so provided by law.

The third paragraph of Sec. 2100, defining the concurrent original jurisdiction of circuit courts does not, it is true, mention probate courts. That paragraph was not changed after the adoption of the Constitution of 1875. Barring amendments immaterial here it stands as it was in 1865, and merely provides for concurrent jurisdiction of

[2]Scott v. Royston (1909), 223 Mo. 568, 592, 123 S. W. 454, 460-1(3); State ex rel. Burns v. Woolfolk (1924), 303 Mo. 589, 595(1), 262 S. W. 346, 348(1); Smith v. St. L. Union Trust Co. (1937), 340 Mo. 979, 984(4), 104 S. W. (2d) 341, 344(5); In re Mills Estate (1942), 349 Mo. 611, 616(2), 162 S. W. (2d) 807, 810(2); Hax v. O'Donnell (1938), 234 Mo. App. 636, 643-4, 117 S. W. (2d) 667.

circuit courts with justices of the peace. However, the civil statute of jeofails, the present Sec. 655(21), should be taken into account in this connection. After the adoption of the Constitution of 1875 substituting probate courts for the county courts in handling probate matters, clause 21 was added to that statute (Sec. 3126, R. S. 1879) providing: ''Wherever any duty prescribed by the provisions of any law of this state in relation to probate matters is required to be performed by the *county* court, the same shall be taken and construed to be required to be performed by the *probate* court.'' But it will be noted the section did *not* transfer such statutory duties with reference to probate matters from the *circuit courts* to the probate courts.

Next referring to the statutes authorizing the *establishment* in the circuit court of claims provable as demands in the probate court. They are the present Sec's 183, 184, 188 and 208. The first three of these go back to Sec's 51, 52, R. S. 1825, pp. 112, 113. They were, respectively, Sec's 3, 4, 8 and 30, G. S. 1865, pp. 502, 504, and Sec's 186, 187, 191 and 213, R. S. 1879. They have been continued *unchanged* since 1865 notwithstanding the adoption of the Constitution of 1875, with two exceptions which will be indicated, and are as follows:

Sec. 183:—''All actions pending against any person at the time of his death, which, by law, survive against the executor or administrator, shall be considered demands legally exhibited against his estate from the time such action shall be revived, and classed accordingly.''

Sec. 184:—''All actions commenced against such executor or administrator, after death of the deceased, shall be considered demands legally exhibited against such estate from the time of serving the original process on such executor or administrator.''

Sec. 188:—''Any person having a demand against an estate may establish the same by the judgment or decree of some court of record, in the ordinary course of proceeding, and exhibit a copy of such judgment or decree . . . to the probate court.'' [The remainder of the section, some of which has been added in later years, is immaterial here. The last four words above, ''to the probate court,'' were substituted in 1879, for the words ''to the court having probate jurisdiction'' appearing in the corresponding 1865 statute.]

Sec. 208:—''If any person commences suit of any kind in the circuit court against an estate, within six months from the date of administration, he may recover judgment but shall be adjudged to pay all costs: Provided, this section shall not apply to suits in equity.'' [This proviso was added in the Revision of 1899.]

Now returning to the decisions cited in marginal note 2, to which appellant refers as authority for the view that probate courts have exclusive jurisdiction over all probate matters. While we are not questioning their conclusions on their particular facts, we think they

are not in point, or else speak so broadly as to contain obiter dicta. The Scott case, which appellant says is the leading authority, was decided by Division I in 1909. It declared "the circuit courts of the State have no jurisdiction whatever over any matter pertaining to probate business, except in rare instances, as before indicated" (where equity may intervene). It was a suit in the circuit court to sell a decedent's real estate to pay his debts, whereas Sec's 141 and 165 entrust that power to the probate courts.

The Burns case was decided en banc in 1924. It interpolated the word "exclusive" in stating the jurisdiction of probate courts over probate business under Art. VI, Sec. 34, Const. 1875. The statement obviously is too broad. It was a suit in the circuit court to remove an administrator, which power is vested in the probate court by Sec's 10, 31 and 43 of our statutes. The Smith and Mills cases, decided in Division 2 respectively in 1937 and 1942, dealt with the exclusive original jurisdiction of probate courts over objections or exceptions to probate settlements of executors or administrators, under Sec's 273 and 283; though the Smith case pointed out that a suit on the administrator's bond with the same objective could be brought directly in the circuit court under Sec's 278 and 281. The Hax case followed the Scott case, and held the probate court's original jurisdiction over probate business is exclusive save in cases of equitable cognizance where it is powerless to grant relief. The suit involved a widow's dower election in personalty under Sec. 325. It was required by Sec. 329 to be filed in the probate court.

None of these five decisions made any reference to the four statutes last quoted above. And it is inconceivable that they meant to hold the probate court's original jurisdiction was exclusive with respect to claims coming within those statutes, for that question was entirely foreign to the issues presented in them. All of them except the Scott case postdated Linn County Bank v. Clifton, 263 Mo. 200, 211(11), 172 S. W. 389, 391(13) decided in Division I of this court in 1914, where the question of the constitutional jurisdiction of circuit courts in the establishment of probate demands was fully examined, the history of our constitutional and statutory law on that subject was reviewed, and it was ruled they did have that jurisdiction. That decision was followed by Division I in 1936 in In re Estate of Thompson, 339 Mo. 410, 426, 97 S. W. (2d) 93, 101(15) and by Division 2 in 1938 in Pryor v. Kopp, 342 Mo. 887, 894(1), 119 S. W. (2d) 228, 229(1). And yet no one of the four (out of five) decisions, supra, rendered subsequent to the Linn County Bank case, considered or referred to that case.

Much probate business is literally "business." The probate courts discharge many administrative and auditorial functions. And it is not hard to understand why the writers of the Constitution of 1875 and subsequent statutes preferred to entrust the circuit courts with

a concurrent jurisdiction in the *establishment* of probate claims, which is essentially a judicial act. The fact should be remembered that while Art. V, Sec. 25 of the present Constitution of 1945 requires probate judges to be licensed to practice law, that was not necessary under the Constitution of 1875 and Sec's 1988 and 2444. This was true of all counties (and cities) large and small. If the probate court had had exclusive original jurisdiction of the establishment of probate claims, many important cases would have been confined initially to that forum, before they could be appealed to the circuit court. It will not do to say, as appellant does in its brief, citing Stephens v. Bernays, 119 Mo. 143, 147, 24 S. W. 46, 47(3), that the reason for permitting the establishment of probate claims in circuit courts under the four statutes heretofore quoted, was because "the jurisdiction of probate courts to administer the estate (was) not in the least interfered with." An appeal would have been an equal impediment. Appellant's first assignment must be overruled.

 Appellant's second contention—that Dr. Barnes' judgment claim was not a premortuary *debt* or *demand*, and therefore could not be established in the circuit court under the four statutes last above set out—is supported by some decisions[3] and opposed by some,[4] cited below. Appellant's brief relies on these cases, and others, and reasons as follows. *All* demands against the estates of decedents are divided into six classes by Sec. 181, and given priority in the order of their classification. The statute speaks of them as "debts" or "judgments". Under Sec's 182 and 186 they must be formally exhibited within one year or else are barred. Thus, a distinct class of *"demands"* is set up.

On the other hand, Sec. 220 declares that "in all settlements of executors and administrators the (probate) court shall settle . . . (and) allow . . . all reasonable *charges* for funeral expenses, leasing real estate, legal advice and service, and collecting and preserving the estate." And Sec. 224, covering the payment of claims, provides the probate court at every settlement shall ascertain the

---

[3]Garnett v. Carson (St. L. Ct. App., 1881), 11 Mo. App. 290; Stephens v. Cassity (K. C. Ct. App., 1904), 104 Mo. App. 210, 77 S. W. 1089; Crow v. Lutz (K. C. Ct. App., 1914), 175 Mo. App. 427, 431-4, 162 S. W. 679; Hewitt v. Duncan's Est. (K. C. Ct. App., 1930), 226 Mo. App. 254, 258-60 (10-13), 43 S. W. (2d) 87, 89-90 (11-16); In re Carlin's Estate (K. C. Ct. App., 1931), 226 Mo. App. 622, 647-8 (11-13), 47 S. W. (2d) 213, 215-6 (11-13); Kopp v. Moffett (K. C. Ct. App., 1942), 237 Mo. App. 375, 382(4), 167 S. W. (2d) 87, 91(4).

[4]Richardson v. Palmer (K. C. Ct. App., 1887), 24 Mo. App. 480, 487; State ex rel. Ziegenhein v. Tittmann (1890), 103 Mo. 553, 558, 563, 15 S. W. 936, 937, 939; Nichols v. Reyburn (St. L. Ct. App., 1893), 55 Mo. App. 1, 7; Matson & May v. Pearson (St. L. Ct. App., 1906), 121 Mo. App. 120, 132-7 (2, 3), 97 S. W. 983, 987-8 (1); State ex rel. Tempel v. Garesche (St. L. Ct. App., 1918), 198 Mo. App. 457, 459-61, 200 S. W. 735; Young v. Boatmen's Nat. Bank (1943), 350 Mo. 1157, 1165-1168 (1), 171 S. W. (2d) 553, 556-8 (1-4).

amount of money on hand "and the amount of *debts* allowed against such estate; and if there be not sufficient to pay the whole of the debts and expenses of administration, the money remaining *after paying the expenses of administration* shall be apportioned among the creditors . . . reserving apportionments made on *claims* which remain undecided until decision be had thereon." Neither of these sections uses the word "demands".

The contention made is that there is a distinct line of demarcation between the "debts", "judgments" and classified "demands" mentioned in the foregoing sections, and the "charges" and "expenses of administration" mentioned in Sec's 220 and 224. Of the latter it is argued, in effect, that the charges and expenses pertain to the administration of the estate, and that the determination of their validity and amount initially devolves exclusively on the probate court, not wholly as a judicial function but in part, at least, as an administrative function—in view of that court's control over and greater familiarity with the whole estate. As stated, the decisions cited above in marginal note 3, all by the Kansas City Court of Appeals, except the first, sustain that view in result.

The Garnett case, first cited, says that if such expense allowances were established by a circuit court judgment, they would become *debts* of the estate, for which the real estate of the decedent could be sold to pay debts in default of personalty, under (now) Sec's 141 and 165; whereas under the law a decedent's real estate cannot be sold to pay costs of administration. But that is expressly allowed by Sec. 141, and the Garnett case was repudiated by the St. Louis Court of Appeals in the Tempel case (marginal note 4). The other cases decided by the Kansas City Court of Appeals, all hold in substance: that an expense of administration, even when claimed by a third party is not strictly or accurately a *demand*, since it must be exhibited and presented within the time and subject to classification as required by (now) Sec's 181, 182, 185 and 186; and that such expenses need not be so exhibited, presented and classified, and are under the sole original jurisdiction of the probate court. The Crow case goes so far as to say the fee of an attorney for services rendered an estate in probate "are as much a part of the expenses and costs of administration as are the fees due the probate judge"—which latter, of course, usually are statutory (Sec. 13404), and always claimed by the judge, himself.

The cases cited in marginal note 4, all decided by this Court or the St. Louis Court of Appeals, except the first, hold to the contrary. The Ziegenhein, Nichols and Matson cases ruled such expenses of administration claimed by an administrator or third party for services after the death of the decedent, *are* demands. But the Matson case further ruled that if such demands be presented to the probate court or even sued on at law they would be subject to classification

under Sec. 181, and might be deprived of their rightful priority. That decision was overruled on that point by the Young case. Appellant's brief says the Young case sustains their contention. We are unable to see wherein it does. It involved a claim for attorney fees filed in the probate court as a formal statutory demand, and we agreed therein with a ruling in the Hewitt case (marginal note 3) that notwithstanding, it was not a demand within the limitation statutes, Sec's 182 and 186. But no question concerning the circuit court's concurrent jurisdiction was involved in the Young case.

The statutes themselves used the word "demand" in different senses, as for instance in Sec. 181 it means allowed demand; in Sec. 186, as a *claimed* demand exhibited by a "claimant". In Sec. 224, the word "claims" is used in the sense of allowed demand. The Young case said: "In our opinion the question whether such a claim is a creditor's claim or an expense of administration depends on its nature, not on its form." Alongside some of these statutes are Sec's 184 and 208, earlier quoted in this opinion. The former validates *all actions* commenced against an executor or administrator *after the death of the deceased,* and says they shall be *considered* as demands. Sec. 208 penalizes any person, who commences a suit of *any kind* in the circuit court against an estate within six months from the date of administration, unless it be in equity, by requiring him to pay the costs. But neither statute limits the subject matter of the action in any way, or excludes suits for expenses of administration. We think the Stephens and later decisions cited in marginal note 3 should be overruled, so far as they are in conflict herewith on the point here under discussion.

But there is one question upon which we remain in doubt, and that is on a point not raised by the appellant. In this case the circuit court not only entertained and adjudicated Dr. Barnes' claim for services as a psychiatric expert, but in rendering judgment it ordered that a copy thereof be certified to the probate court "there to be classified and to be paid as costs of administration of the estate of the decedent." There is nothing in the statutes, so far as we can find, authorizing the circuit court to do more than to adjudicate the claim and order the judgment certified to the probate court. We find nothing permitting it to classify the judgment as an expense of administration. But since this question has not been raised, and the circuit court's classification was obviously correct—as much so as the classification of the attorney fee in the Young case—we think the judgment should not be disturbed on appeal.

For the reasons stated the judgment is affirmed. All concur.