Joe TRASK, Plaintiff-Respondent,

v.

Elton DAVIS, Executor of the Estate of W. A. Neal, deceased, Defendant-Appellant.

No. 7513.

Springfield Court of Appeals.

Missouri.

Feb. 26, 1957.

---

C. A. Powell, Dexter, for appellant.

Claude Arnold, Dexter, Briney & Welborn, Bloomfield, for respondent.

RUARK, Judge.

Joe Trask filed claim in probate court against the executor of the estate of his deceased father-in-law, W. A. Neal, for services in nursing and personal care of Neal as an invalid. The amended claim was for a total of $6,830, for 683 days, and the case was submitted to the jury on services rendered through the period May 22, 1952–April 10, 1954. Trial in probate court resulted in verdict for claimant in amount of $4,000. Upon appeal to circuit court a jury awarded Trask the sum of $2,943.50. The executor has appealed.

W. A. Neal, age 97 years at the time of his death, and his wife, Altha, also elderly, and their daughter, Mae, lived in a home on what was said to be a 200-acre tract in Stoddard County. The only evidence as to "farmability" of this tract is the application for guardianship filed by the daughter, Mae, on May 22, 1952, which lists the probable value of the real estate (exclusive of money and personal assets) at $2,500.

In 1948 respondent, Trask, and the daughter, Mae, were married. From then on until the death of W. A. Neal on April 10, 1954, Neal, his wife, Altha, and Trask and his wife, Mae, lived in the same house on the tract above-mentioned, and to all outward appearances they lived in all respects as one family; that is, their food was cooked and served together and they used the same facilities of the home.

■ By taking the evidence most favorable to the respondent, as we must do on this appeal, we find that by 1948 both W. A. Neal and his wife, Altha, had begun to suffer the infirmities of old age. Neal's mental faculties had failed to the extent that he did not recognize old neighbors. He was "pretty feeble," "he wasn't out of the house hardly at all after Joe come there." By May 1952 the depressing retrogression toward the seventh age of man made necessary an adjudication of incompetency against both W. A. Neal and his wife, Altha, and Mae Trask was appointed guardian. The following month (June 1952) Altha, wife of W. A. Neal, died. At somewhere near the same time misfortune befell Mae Trask. She became afflicted with cancer, from which she did languish and eventually (October 1954) die. During the period extending from May 1952 until Neal's death in April 1954, which is the period in question, Neal grew progressively more infirm and required more care. His hearing was extremely bad; his eyesight was failing (he eventually became totally blind); he was so feeble that he had to be led and supported from his bed to the table and helped into a chair. In the final days of his life he became completely bedfast. During the period under question the aged man had little or no control over any of his bodily functions. This condition frequently involved stripping him of his clothes, washing him and often the change of bedding. Though W. A. Neal is dead, we are reluctant to intrude upon his defenseless privacy by dwelling more than necessary upon the sad indignities so often wrought by a cruel senility. Suffice it to say that he was helpless to the extent that he was dependent upon others for his care, and that the care required was sometimes exacting, onerous and often unpleasant for those who rendered it.

Before her own illness had gone too far, it appears that Mae, the daughter and wife, performed a great many of the services for her father, but even during 1952 she was compelled to make a number of trips to St. Louis, sometimes to remain a week or two at a time, for examination and treatment; and as her disease continued its inroads her capacity for help became more and more limited. She did what she could, "but she wasn't able a lot of times" and was "in bed a lot." She "did a lot of work," but "she didn't do all of it even when she was able." The claimant's evidence shows that Joe Trask carried bedpans and slop jars, stripped clothes from and washed his father-in-law, gave him baths, washed his clothes, cut his hair, shaved him, helped him about when not bedfast and carried

food to his bed when bedfast, prepared (at times when Mae was absent or unable by reason of her illness) and served his meals. Some of these services were performed both in the daytime and at night. How much farming Trask did, or had to do, during this period is not shown. He worked at a mill "driving nails" for a total of two or three months in each of the years 1952 and 1953. This was not always by regular hours, for the testimony was that he would sometimes come to work in the middle of the morning and sometimes would go home in the middle of the afternoon. "And there would be days that he couldn't work because he had to stay at home and help take care of the folks."

Mae filed her final settlement as guardian of W. A. Neal in July following her father's death. The claimant filed no claim for his services against the guardian, nor did he sue such guardian in circuit court.

At the trial of this case in circuit court claimant proved the execution of and there was received in evidence a lease executed on the 7th day of February, 1953, but purporting by its terms to cover the entire calendar year of 1953, wherein Mae Trask was guardian and lessor and Joe Trask and Mae Trask were lessees, and by which the lessees were rented the farm heretofore mentioned, with right to plant all tillable land and to live in the dwelling house. Paragraph 3 of such instrument provided:

"As a rental for said premises during the year 1953, the Lessees shall furnish all of the groceries, clothing, electricity, and fuel for the Lessor and shall pay the taxes and insurance on the buildings and land for the year 1953. It is agreed and understood that *the Lessees shall not be required to per-*

*form any personal services for said Lessor, and that the rents and proceeds therefrom are not to be considered as compensation for personal services rendered or to be rendered to and for Lessor.*"

The exhibit was offered and admitted for the sole purpose of showing the intent of claimant to charge for personal services rendered Neal, and the claimant sought to read to the jury only paragraph 3, but at the insistence of the defendant (after objection) the whole lease was read.[1]

The claimant offered to show (not by his own testimony) various "self-serving" statements which he had made at different times during a period commencing at a time prior to the adjudication of incompetency of Neal and continuing, on various occasions, up through 1952 and 1953. These were out of court statements made in the course of conversation to persons stranger to these proceedings. The substance and effect of these various statements was that the claimant was going to be paid, or intended to be paid, for his personal services in taking care of the old man. The court refused to admit those statements which were made *prior* to the adjudication of incompetency,[2] but did admit several such statements which were made after such adjudication and prior to the death of W. A. Neal.

■■ Appellant contends that under the circumstances here related the claim could not be prosecuted against the executor in probate court; that the claim should have been filed with the guardian before discharge, and if disputed it should have been determined in the circuit court. The statutes in force at the time of the origin of this claim[3] provided for the publication of

1. The claimant also proved the execution of and offered a similar lease dated August 8, 1951, but purporting to cover the calendar year 1952. The lease was signed by Altha Neal as lessor and Joe Trask and Mae Trask as lessees. This was excluded on the ground that Neal had not yet been adjudged incompetent.

2. It also refused and struck out statements made by claimant that he "expected" compensation.

3. All statutory references are to RSMo 1949, and V.A.M.S. and this case is not concerned with the probate code which became effective January 1, 1956.

notice of appointment of a guardian for incompetent, sec. 458.210, and the filing of claims by creditors, sec. 458.320. This latter is held to be confined to *claims which accrued prior* to adjudication of incompetency and appointment of guardian. Evans v. York, Mo.App., 195 S.W.2d 902; In re Murphy's Estate, Mo.App., 231 S.W.2d 200; In re Moore's Guardianship, Mo.App., 148 S.W.2d 116. Sec. 458.550 provided that upon the death of the ward notice should be given the personal representative, and the guardian should, within a limited time, settle his accounts and deliver the assets to such personal representative. It did *not* provide for notice to creditors, nor did it provide any method for determining disputed claims. It furnished no vehicle for determination of disputed claims *which accrued during the period of guardianship*. Under this statute, upon the death of the ward the guardian became functus officio, except for the purpose of making settlement and surrender, and the administrator or executor became the personal representative against whom the claim must be made. Evans v. York, Mo.App., 216 S.W.2d 124, 128; Williams v. Vaughan, 363 Mo. 639, 253 S.W.2d 111, 116; Greever v. Barker, 316 Mo. 308, 289 S.W. 586, 588. To the contrary we find Greever v. Barker, 204 Mo.App. 190, 223 S.W. 1087. But this holding is weakened by the later decisions, and this court has said that we are not bound to follow it. Tock v. Tock, Mo.App., 120 S.W.2d 169, 172.

■ On the other hand, Ch. 464, relating to payment of claims against estates of decedents, furnished full and complete method and machinery for the notification of creditors, the filing of claims and the trial and defense of such. Under the sections of this chapter the claim could be established either in the probate court or the circuit court, and the jurisdiction for the establishment of disputed claims (except suits in equity) is concurrent. Rhodes v. Rhodes' Estate, Mo.App., 246 S.W.2d 98; Barnes v. Boatmen's National Bank of St. Louis, 355 Mo. 1136, 199 S.W.2d 917.[4]

We find no exception or exclusion made in the chapter last above mentioned in reference to claims which accrued during the disability of a decedent; and since the claim was for services alleged to have been performed *after* granting of letters of guardianship and could not, upon the death of the ward, be filed against the guardian (as such) in the probate court, and since the guardian, upon the death of the ward, immediately lost his authority (except for the purpose of rendering his account and surrender) and the executor had assumed the mantle of authority in representing the decedent ward's estate, the filing of any claim or suit against the guardian would have been useless. The statute itself did not provide for the presentation of such claim and, as a practical matter, since no publication of notice to creditors was required, a holding that presentation of the claim to the guardian was necessary would in many instances result in fraud upon legitimate creditors.

■ We hold against the appellant on these contentions.

■ Appellant next contends that claimant, the son-in-law, was a member of the household and therefore the services which he rendered are presumed to have been rendered gratuitously, and that he failed to sustain the burden of showing an agreement or promise to pay him and that he intended to charge therefor.

■ It is not disputed that membership in a family is not limited to those of blood kin, or that a son-in-law in the household can be a member of the family. See Wells v. Goff, 361 Mo. 1188, 239 S.W.2d 301.

4. See Reando v. Mosplay, 90 Mo. 251, 2 S.W. 405; see City of St. Louis v. Hollrah, 175 Mo. 79, 74 S.W. 996; Tock v. Tock, Mo.App., 120 S.W.2d 169.

Likewise it is well settled that services rendered by a member of the family are presumed to be gratuitous. But this presumption only casts the burden upon the claimant to overcome it, and proof of the "contract" may be made by direct evidence or established by facts and circumstances under which such contract may be inferred. See cases gathered in Vosburg v. Smith, Mo.App., 272 S.W.2d 297, 301; see 7 A.L.R.2d 140 et seq.

But in this case it is not necessary to find or infer a promise upon the part of the incompetent to pay. When services or things necessary for sustenance are supplied to an incompetent in need of them, with expectation of payment on the part of the person so furnishing them, the law "implies" a fictitious contract on the part of the incompetent to pay the reasonable value of the things so supplied. 28 Am.Jur., Insane and other Incompetent Persons, sec. 62, p. 699, sec. 63, p. 700; 44 C.J.S., Insane Persons, § 89(2), p. 240; Hartley v. Hartley's Estate, 173 Mo.App. 18, 155 S.W. 1099, 1101. And this is true when the incompetent has a guardian *if* the guardian is not supplying the required necessaries, the reason being that "if the law were not so, the insane might perish." Reando v. Mosplay, 90 Mo. 251, 258, 2 S.W. 405, 407; Tock v. Tock, Mo.App., 120 S.W.2d 169; see St. Vincent's Sanitarium v. Murphy, Mo.App., 209 S.W.2d 560.

It is contended that the testimony of witnesses in respect to declarations, made by claimant, that he intended to charge and was going to be paid for the services he rendered, were incompetent for any purpose and that the statements so made were self-serving. We have not been cited, nor have we found, any case in this state of the character of the one under consideration which we can say is authority on this proposition. We do find two cases in which the court paid some attention to the fact that the claimant had *not* made any statements similar to the

ones in question here. Shern v. Sims, Mo. App., 258 S.W. 1029, 1030; Baxter v. Troll, 152 Mo.App., 557, 133 S.W. 1188, 1189. We are here dealing, not with a contract which involved a meeting of the minds or an assent inferred, where secret intention would have no force or relevancy, but with an obligation of fictitious birth from the parents of necessity on the one hand and intention to charge on the other. Competency of a collateral fact turns on whether its bearing on the main issue is so intimate and valuable as tending to prove the main fact, Lock v. Chicago, B. & Q. R. Co., 281 Mo. 532, 219 S. W. 919, 922, and evidence of design or plan which tends to shed light on the question which the jury has to decide is relevant. Wigmore on Evidence, vol. 1, sec. 102, p. 534; 31 C.J.S., Evidence, § 256, p. 1007. It can hardly be argued that evidence which showed claimant's intention was not relevant to the issue. In Bradley v. Modern Woodmen of America, 146 Mo.App. 428, 124 S.W. 69, it was said, at loc. cit. 75, "The contention is * * * those declarations were self-serving. In our judgment the right rule to apply is the one thus stated by a learned commentator: 'Whenever the demeanor of a person at a given time becomes the object of inquiry, his expressions, as constituting part of that demeanor, and as indicating his present intent and disposition, cannot properly be rejected in evidence as irrelevant.' Evans' note to Pothier on Obligations, II, 242. That passage is quoted in 1 Greenleaf (16th Ed.) § 108, * * *. If the statements of an absentee concerning why he is leaving home are excluded from a jury, they will be deprived of illuminating evidence upon the main inquiry."

The two objections to admission of self-serving statements are (a) violation of the hearsay rule and (b) it opens the door to fraud by manufactured evidence. 20 Am.Jur., Evidence, § 558, pp. 471, 472; 31 C.J.S., Evidence, § 216, p. 952. But whether it be argued as not within, or as an

exception to, the hearsay rule, statements reflecting intention made under circumstances which do not reflect any motive in the declarant to deceive at the time of the declaration, when made contemporaneously and in association with an act or contemplated act which does not, of and in itself, reflect the mental attitude of the doer at the time, are admissible in evidence when they tend to illustrate and give color and character to the act in question. Mattan v. Hoover Co., 350 Mo. 506, 166 S.W.2d 557; Lewis v. Lowe & Campbell Athletic Goods Co., Mo.Sup., 247 S.W.2d 800, and cases cited at loc. cit. 804; see discussion and cases cited in Edwards v. Ethyl Gasoline Corp., 342 Mo. 98, 112 S.W. 2d 555; Stephens v. Fowlkes, 338 Mo. 527, 92 S.W.2d 617, 620, and cases cited; see Kansas City Star Publishing Co. v. Carlisle, 8 Cir., 108 F. 344, 360; see In re Thomasson's Estate, 347 Mo. 748, 148 S.W. 2d 757; Hoelmer v. Heiskell, 359 Mo. 236, 221 S.W.2d 142; Hannibal & St. Joseph Ry. Co. v. Clark, 68 Mo. 371; Darrett v. Donnelly, 38 Mo. 492. In Heynbrock v. Hormann, 256 Mo. 21, 164 S.W. 547, 550, the court said, "It would be a solecism to say such a party was required to show that the possession was under a claim of right, and to say that evidence that he had asserted such a claim of right was inadmissible."

■ The statements which indicated intention to charge and be paid commenced shortly after the beginning period during which the services were rendered and are contemporaneous therewith. They tend to illustrate and lend color and character to the act, for they clearly showed that such services were not rendered gratuitously and in exchange for benefits received as a member of the family, but as an outsider who was rendering them under a business arrangement and who it is presumed intended to charge therefor. If it be objected that Trask at such time had a motive, the motive being to build up a case showing that he was to receive compensation, then

the very objection *confesses the actual existence of the crucial fact,* i. e., the intention to charge.

■ Appellant contends that the admission of the lease, Exhibit B, was error because such lease was invalid as having been executed without authority of probate court. But the lease was not received to serve the purpose of proving the existence or to secure the benefit of the lease, as a valid instrument, but as a fact in the chain of circumstances which tended to shed light upon the existence or nonexistence of a family (and therefore presumably gratuitous) relationship between the parties in respect to the transaction in question. We think what we have said as to the contention in regard to self-serving statements is applicable to the admission of the lease. We note in Lillard v. Wilson, 178 Mo. 145, 77 S.W. 74, 75, in a similar situation, there was an agreement to share groceries and a lease, which the court held strongly tended to take the case out of the rule of presumptively gratuitous service because "in no true sense" could it be said that the parties lived together *as a family.*

Claimant's instruction number 1, after informing the jury that the claim was for necessary services rendered to Neal during the period extending from May 22, 1952, until his death on April 10, 1954, and after hypothesizing the admitted relationships, capacity and circumstances of the parties, stated:

"In this connection you are further instructed that if you find and believe from the evidence that the claimant Joe Trask rendered services to the said W. A. Neal while the said W. A. Neal was an incompetent person, if you so find, and while Mae Trask was his guardian and if you further find and believe that said services were necessary for the care, comfort and well being of the said W. A. Neal and at the time that said necessary services, if any, were so rendered by the said

Joe Trask, if you find they were rendered, the said Joe Trask expected to be paid for said services and that said services, if any, were not intended to be rendered gratuitously by the said Joe Trask, then in that event you will find the issues in this case for the claimant Joe Trask in such sum as you find and believe that such services were reasonably worth.

"You are further instructed that the word 'necessaries' as used in these instructions are not limited to those services which are proper and required to sustain life only, but such services as were suitable for the said .W. A. Neal according to his circumstances and condition in life, as you may find from the evidence."

This instruction is attacked (a) because it failed to require a finding of "mutual agreement" and (b) because it failed to restrict the evidence to be considered by the jury as to the kind and character of the services rendered.

 We have already disposed of the contention that claimant was required to prove a meeting of the minds or mutual agreement for payment. Taking the instruction as a whole, it limited the recovery to services necessary for the care, comfort and well-being of the deceased. The definition of necessaries was adequate. 44 C.J.S., Insane Persons, § 115 b, p. 276; St. Vincent's Sanitarium v. Murphy, Mo.App., 209 S.W.2d 560. The instruction specifically designated the period covered. There was no evidence offered in respect to any kind or character of services which were not encompassed by the claim. There was nothing which the jury could have considered except that which it was required to consider. Therefore, we do not see how the failure to set forth or describe the services rendered in detail, *if it was error,* could have possibly been harmful. See Eisiminger v. Stanton, 129 Mo.App. 403, 107 S.W. 460, 461. The jury is presumed to have taken the evidence into consideration in making up its verdict. Warren v. Davis, Mo.App., 97 S.W.2d 159, 163. It would have been difficult to describe the services in detail without extending the instruction to considerable length. It is not pointed out how there could have been any possibility of misunderstanding by the jury as to what services were involved; but if the defendant thought the instruction was too broad and that there were items which needed to be defined, he should have offered instructions properly defining them. Not having done so, he cannot now complain. Evans v. Wall, Mo.App., 199 S.W.2d 908; Guthrie v. Fields, Mo.App., 299 S.W. 141.

 Was the verdict for $2,943.50 excessive? A jury in probate court had awarded $4,000. The amount of the award is less than half of the amount claimed. One of claimant's witnesses put the value of the services performed at $12 per day, another at $8 per day. In view of the evidence as to the character of the services performed, and their continuing nature, we cannot say it was excessive.

 Finally, we are of the opinion that, taking the evidence most favorable to the claimant and giving him the benefit of all reasonable inferences to be drawn therefrom, a jury question was made as to whether necessary services were rendered, and whether the claimant intended to charge therefor. Such being the case, we find no error against the defendant and the judgment must be affirmed. It is so ordered.

McDOWELL, P. J., and STONE, J., concurs.